THE STATE OF OHIO, APPELLEE, *v.* VRONA ET AL., APPELLANTS.

(No. 1641—Decided
April 20, 1988.)

*Jill R. Heck*, prosecuting attorney, and *Dorcas Russo*, for appellee.
*Richard J. Marco*, for appellants.

CACIOPPO, J. Defendant-appellant, Jo Ann Vrona, was indicted on multiple counts of theft and passing bad checks, and one count of failing to register as a tour promoter. The charges arose out of the operation of a business incorporated as H.T. Management Company, d.b.a. Vacation Travel; this company was also indicted. Several bank accounts were opened by Vacation Travel, and the signature cards were authorized by Michael Nemerovsky as president. Nemerovsky also represented himself as sole director and sole shareholder of the company; he was nineteen years old and had previously spent six months working as a travel-agent trainee at Holiday Travel, an agency owned by appellant.

Shortly after Holiday Travel had closed its Parma, Ohio, location, Vacation Travel opened in Medina. Appellant maintained that she was merely an employee of Vacation Travel.

The indictments stemmed from incidents involving several victims who had made travel arrangements through Vacation Travel; each victim had dealt with the appellant either personally or by telephone. For the most part, these individuals made travel arrangements and paid for them in full or in part. When the trips were cancelled, either by the customers or for some other reason, refunds were expected. Appellant promised each victim a refund on numerous occasions.

The victims' contacts with or attempts to contact the appellant resulted in excuses, promises, and misleading information. Several refund checks were dishonored.

During a trial by jury, the court granted a Crim. R. 29(A) motion for acquittal as to two counts of passing a bad check and one count of theft. The jury acquitted Vrona on one count of theft, and found her guilty on five counts of theft by deception, one count of passing a bad check, and one count of failure to register as a tour promoter. Vrona now appeals.

### Assignments of Error

"I. The trial court erred in refusing to dismiss the charge of failing to register as a tour promoter for the

reason that Ohio Revised Code Section 1333.96 is unconstitutional."

"III. The trial court erred in failing to inform the jury that it had taken judicial notice of an essential fact and in failing to inform the jury that the 'Air Traffic Conference of America' and the 'Interstate Commerce Commission' no longer could certify travel agents."

R.C. 1333.96 provides in relevant part:

"(A) As used in this section:

"(1) 'Travel agency' means any person who is an officially appointed agent of the air traffic conference of America or the international air transport association for the sale of tickets, or any person who is authorized by the interstate commerce commission to arrange for the transportation of passengers and their baggage by motorcoach.

"(2) 'Tour Promoter' means any person who is not a travel agency who offers for sale, other than exclusively through travel agencies, transportation to the general public that costs more than a total of fifty dollars per person with or without any or all of the following:

"(a) Transfers to and from an airport;

"(b) Lodging, with or without meals;

"(c) Sightseeing, at one or more destinations.
"* * *

"(C) Every tour promoter intending to do business in this state shall register with the secretary of state before commencing business in this state. The registration fee is ten dollars. Registration shall include the tour promoter's principal place of business and the name and address of any owner or the chief executive and operating officers ·of the tour promoter."

Appellant was charged with vio-lating R.C. 1333.96(C). To convict, the state first had to show that Vrona did not fall within the definition of "travel agency" in R.C. 1333.96(A).

As to the three authorities designated in the statute to confer appointment or authorization as a travel agency, Congress removed the authority of the Interstate Commerce Commission (ICC) in 1983; the trial court took judicial notice of this fact. The Air Traffic Conference of America (ATCA) has been known as the Airline Reporting Commission (ARC) since 1985.

The appellant contends that the ATCA effectively ceased to exist. We disagree. The testimony of ARC employee, Samuel Bruce, showed that, essentially, only a name change occurred; the ARC was at the same location, with the same personnel and functions.

Vrona argues that the statute is unconstitutionally vague because all of the options listed are no longer available. This argument is without merit. The statute is not vague; the language is very clear in listing the options. We further find no merit in appellant's contention that the statute constitutes an *ex post facto* law. R.C. 1.50 provides:

"If any provisions of a section of the Revised Code or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the section or related sections which can be given effect without the invalid provision or application, and to this end the provisions are severable."

The statute's reference to the ICC has been rendered invalid by the action of Congress. The ATCA is now known as the ARC; therefore, two valid options for authorization remain.

The action of Congress made the option of registration with the ICC a nullity. Therefore, the state was effectively relieved of its burden of proving

appellant's failure to register with the ICC. Since that provision no longer has any force or effect, the fact that the trial court failed to inform the jury of its taking judicial notice of the action of Congress cannot be considered plain error. Plain error cannot be shown where the outcome of the case would not clearly have been otherwise. *State v. Cooperrider* (1983), 4 Ohio St. 3d 226, 227, 4 OBR 580, 581, 448 N.E. 2d 452, 453. There was no possibility that the jury could have found that Vrona or Vacation Travel had registered with the ICC.

Appellant's first and third assignments of error are overruled.

### Assignment of Error II

"The trial court erred when it permitted hearsay testimony based upon business records when the declarant was not the custodian of those records or otherwise qualified as a witness."

Appellant complains of the admission of the testimony of Samuel Bruce of the ARC who testified that neither she nor Vacation Travel had registered with or been certified by the ARC as a travel agency. Bruce's testimony was admitted under the business records exception to the hearsay rule. Evid. R. 803(6) and (7).

The evidentiary rules provide that such evidence is admissible if the testimony of the custodian of the records or other qualified witness shows, *inter alia,* that such records are kept in the course of a regularly conducted business activity and that it was a regular practice of that business activity to make the records. While Bruce was not the custodian of the particular records at issue, he was a qualified witness. The phrase "qualified witness" should be broadly interpreted. 1 Weissenberger's Ohio Evidence (1985) 75, Section 803.79.

"The witness providing the foundation need not have firsthand knowledge of the transaction. Rather, it must be demonstrated that the witness is sufficiently familiar with the operation of the business and with the circumstances of the record's preparation, maintenance and retrieval, that he can reasonably testify on the basis of this knowledge that the record is what it purports to be, and that it was made in the ordinary course of business consistent with the elements of Rule 803(6). * * *" *Id.* at 76.

Bruce's testimony showed that he was extremely familiar with the operations and procedures of the ARC and therefore, as a qualified witness, his testimony was properly admitted. See *State v. Knox* (1984), 18 Ohio App. 3d 36, 18 OBR 61, 480 N.E. 2d 120.

### Assignment of Error IV

"The trial court erred in permitting telephonic identification of the defendant without the proper foundation."

This assignment of error is related to a charge of theft by deception involving the Orange City School District. Michael Fritz, Director of Community Services, had made arrangements for an overnight trip for a senior citizens group. The senior citizens paid their money to the district and the district then issued two purchase orders totaling $6,870. The purchase orders listed the vendor as "Holiday Travel, 245 South Court Street, Medina, Ohio 44256, Attn: Jo Ann." Two checks, in the amounts of $3,800 and $3,070, payable to Holiday Travel, were then issued by the district.

Fritz testified that all arrangements for the trip had been made over the telephone and that the group had previously dealt with Holiday Travel. Fritz stated that he was first contacted by phone on August 19, 1986, by someone who identified herself as "Jo Ann," and who requested the balance

of payment of $3,070. A courier was sent to pick up the check. On August 29, Fritz called Vrona because of problems with the arrangements. He stated that he called a Medina number which he apparently got from information after dialing the number of Holiday Travel in Parma; he further stated that the party answering identified herself as "Jo Ann" and that he recognized her voice as that of the person he had spoken to previously. Fritz also testified that he called numerous times after this and that the person whose voice he recognized as Jo Ann's made various excuses and promises regarding the trip, the cancellation, and the refund.

Vrona argues that Fritz's testimony was inadmissible for lack of a proper foundation. Evid. R. 901 entitled "Requirement of Authentication or Identification" provides in relevant part:

"(A) General Provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

"(B) Illustrations. *By way of illustration only and not by way of limitation,* the following are examples of authentication or identification conforming with the requirements of this rule:

"* * *

"(6) Telephone conversations. Telephone conversations, by evidence that a call was made to the number assigned at the time by the telephone company to a particular person or business, if (a) in the case of a person, circumstances, including self-identification, show the person answering to be the one called, or (b) in the case of a business, the call was made to a place of business and the conversation related to business reasonably trans-

acted over the telephone." (Emphasis added.)

This provision is identical to Fed. Evid. R. 901(a) and (b)(6). Both provide a liberal standard for the authentication of telephone calls. 4 Weinstein's Evidence (1983) 901-83, Section 901(b)(6)[01].

Testimony as to a telephone call is admissible where there is a reasonable showing, through testimony or other evidence, that the witness placed or received a call as alleged, plus some indication of the identity of the person spoken to. *Id.* "There is no fixed identification requirement for all calls." *Id.* at 901-84. "Each case has its own set of facts." *Leonard* v. *Mowbray* (1926), 21 Ohio App. 268, 276, 153 N.E. 197, 199.

Appellant cites *State* v. *Williams* (1979), 64 Ohio App. 2d 271, 18 O.O. 3d 262, 413 N.E. 2d 1212, for the proposition that the statement of a person calling the victim and identifying himself as the defendant is insufficient to identify the caller's identity as the defendant where the victim does not recognize the caller's voice; and that direct or circumstantial evidence which reasonably identifies the defendant as a party to the conversation · is necessary for a sufficient foundation to admit the conversation. The facts and circumstances in *Williams* involved an isolated incident where a person, identifying himself as the defendant, called the witness. "The conversation did not relate to matters uniquely within the knowledge of the defendant, nor was the identity of the caller corroborated by independent facts. Anyone with the slightest knowledge of the accused could have placed the call." *Id.* at 274, 18 O.O. 3d at 264, 413 N.E. 2d at 1215.

The evidence in the case *sub judice* shows that, although someone identifying herself as "Jo Ann" made the initial call to Fritz, Fritz called a person identifying herself as "Jo Ann" on

many occasions. Further, Fritz made contact with "Jo Ann" by initially calling the number of Holiday Travel in Parma and was given a new number in Medina. Holiday Travel had been owned and operated by the appellant.

Finally, the pattern of excuses and promises of a refund that were made through the various telephone conversations is similar to the experiences of the other witnesses who dealt with the appellant in person. This evidence reasonably identifies appellant as a party to the telephone conversation; authentication was properly made. The fourth assignment of error is overruled.

## Assignment of Error V

"The trial court erred when it ruled that Medina County was the proper venue for the theft by deception charge relative to the Orange City School District."

Vrona contends that the state failed to prove that any element of the charge involving the Orange School District occurred in Medina County; she claims that Cuyahoga County would be the proper venue. We disagree.

"In the prosecution of a criminal case, it is not essential that the venue of the crime be proved in express terms, provided it be established by all the facts and circumstances, beyond a reasonable doubt, that the crime was committed in the county and state as alleged in the affidavit. * * *" State v. Gribble (1970), 24 Ohio St. 2d 85, 53 O.O. 2d 222, 263 N.E. 2d 904, paragraph two of the syllabus (following State v. Dickerson [1907], 77 Ohio St. 34, 82 N.E. 969).

R.C. 2901.12 controls the issue of venue, and provides in relevant part:

"(A) The trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the of-

fense or any element thereof was committed.

"* * *

"(G) When it appears beyond a reasonable doubt that an offense or any element thereof was committed in any of two or more jurisdictions, but it cannot reasonably be determined in which jurisdiction the offense or element was committed, the offender may be tried in any such jurisdiction.

"(H) When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, he may be tried for all such offenses in any jurisdiction in which one such offense or any element thereof occurred. Without limitation on the evidence which may be used to establish such course of conduct, any of the following is prima-facie evidence of a course of criminal conduct:

"* * *

"(2) The offenses were committed by the offender in his same employment, or capacity, or relationship to another."

"R.C. 2901.12(G) and (H) are statutory reflections of the modern mobility of criminals to perform unlawful deeds over vast geographical boundaries. The above-noted statutory provisions effectuate a sensible, efficient approach to justice by permitting one court to hear a matter which has roots in several court jurisdictions." State v. Draggo (1981), 65 Ohio St. 2d 88, 90, 19 O.O. 3d 294, 295, 418 N.E. 2d 1343, 1345.

Vrona was charged with violating R.C. 2913.02(A)(3):

"(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

"* * *

"(3) By deception; * * *[.]"

The facts and circumstances show that Fritz called appellant in Medina

on many occasions to discuss problems with travel arrangements, and later to collect a refund for the trip that was cancelled.

It appears beyond a reasonable doubt that, on these occasions, Vrona was exerting control over the school district's property by deception, deception being defined in R.C. 2913.01(A):

" 'Deception' means knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission which creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact."

Appellant's fifth assignment of error is not well-taken.

### Assignment of Error VI

"The trial court erred when it permitted the testimony of attorney Kathryn Belfance and accepted into evidence an order of consolidation entered by a federal bankruptcy judge."

Some months prior to trial, the appellant and her husband filed a voluntary petition under Chapter Seven of the United States Bankruptcy Code. H.T. Management, Incorporated, d.b.a Vacation Travel, had also filed a petition under Chapter Seven. Attorney Kathryn Belfance, appointed as trustee for both cases, moved the bankruptcy court for an order substantively consolidating the petitions; the motion was granted.

The indictments at issue in the trial court were against both Vacation Travel, as a corporate entity, and Vrona, as an individual. The state sought to introduce the testimony of the trustee, as well as the bankruptcy court's consolidation order, as evidence of appellant's control of the operations of Vacation Travel. The court admitted the evidence over defense counsel's objections. Vrona argues that this evidence was materially prejudicial, and that its admission was an abuse of discretion.

As to the testimony of the trustee, Belfance stated that after studying relevant documents, and examining, under oath, the Vronas and Nemerovsky, it was her opinion that the cases should be substantively consolidated. We do not consider the probative value of this testimony to be outweighed by unfair prejudice.

The order of the bankruptcy court stated, in relevant part:

"It appearing to the Court that by reason of the interrelationship of the Debtors, and the direct and indirect control by Debtors, STEPHEN JOHN VRONA and JOANN VALKA VRONA, substantive consolidation of the cases would be in the best interest of the creditors of Debtors' estates."

Due to the lesser standard of proof required for the bankruptcy court to grant the motion to consolidate, we consider this evidence more prejudicial than probative. We caution the trial court to be mindful of the differences in standards of proof in its future consideration of such evidence.

However, we do not find that admission of this evidence amounted to prejudicial error. Our review of the record shows that the remaining evidence alone comprised overwhelming proof of Vrona's control of Vacation Travel, making the error harmless beyond a reasonable doubt. *State* v. *Williams* (1983), 6 Ohio St. 3d 281, 290, 6 OBR 345, 353, 452 N.E. 2d 1323, 1333. There was sufficient independent evidence for the jury to find that Vrona actually controlled the business, making the federal court order cumulative evidence. See *State* v. *Logan* (July 15, 1987), Summit App.

Nos. 12904, 12926, 12927, at 13-14. The sixth assignment of error is overruled.

### Assignments of Error

"VII. The trial court erred in overruling appellant's motion for acquittal at the close of the state's case when the state failed to establish proof of each element of the crime.

"VIII. The verdict is against the manifest weight of the evidence."

In her brief, the appellant combined the discussion of these assignments of error, so we will address them together.

Vrona argues that the trial court erred in denying her Crim. R. 29(A) motion for acquittal on five counts of theft by deception, one count of passing a bad check, and one count of failing to register as a tour promoter. In our review of a ruling on a Crim. R. 29(A) motion, we must construe the evidence in a light most favorable to the prosecution. A denial of the motion is proper "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261, 9 O.O. 3d 401, 381 N.E. 2d 184, syllabus. In the instant case, there was sufficient evidence on each element of each count so that reasonable minds could have reached different conclusions regarding appellant's guilt.

In considering Vrona's claim that the verdict on each count was against the manifest weight of the evidence, we have reviewed the entire record, weighed the evidence and all reasonable inferences, considered the credibility of witnesses, and determined that in resolving conflicts in the evidence, the jury did not clearly lose its way and create such a manifest miscarriage of justice that the conviction must be reversed and a new trial

ordered. See *State* v. *Martin* (1983), 20 Ohio App. 3d 172, 20 OBR 215, 485 N.E. 2d 717, paragraph three of the syllabus. See, also, *State* v. *Roberson* (Feb. 17, 1988), Summit App. No. 13288, unreported.

Accordingly, assignments of error seven and eight are overruled.

### Assignment of Error IX

"The trial court erred in excluding the testimony of a defense witness offered to establish bias and impeach the testimony of state's witness."

Vrona sought to introduce the testimony of Craig Davis to establish the bias of Nemerovsky, the state's principal witness. Davis was to have testified as to statements Nemerovsky made to him regarding Nemerovsky's ownership of the business, and to drug deals where Nemerovsky paid Davis with cash obtained from Vacation Travel. The court indicated that it would allow Davis to testify as to any prior inconsistent statements of ownership, but excluded any further testimony pursuant to Evid. R. 608(B), which precludes an attack on the credibility of a witness through the use of extrinsic evidence of specific instances of conduct.

We are aware of the distinctions between the separate issues of bias and credibility, and recognize that the same evidence may be admissible for one purpose yet inadmissible for another. Nevertheless, admissibility in these instances is still governed by Evid. R. 403.

Vrona asserts that Davis' testimony was necessary to establish that Nemerovsky would benefit from her conviction. However, our review of the record shows that inquiry into Nemerovsky's bias was made on cross-examination:

"Q. Now, it is very important for you that this jury believe that Miss Vrona was the owner of this business, isn't it?

"A. Of Vacation Travel?

"Q. Yes.

"A. Yes.

"Q. That is important to you?

"A. Yes.

"Q. It is important for you because you have been charged with certain crimes in connection with the operation of the business, and those charges were dismissed?

"A. Yes.

"Q. If you agreed to testify?

"A. They were dismissed because of evidence.

"Q. They were dismissed, there wasn't enough evidence to get you, is that what you are saying?

"A. To get me?

"Q. Yes.

"A. No, the evidence clearly showed it wasn't me who wrote the one check to Rev. Beck.

"Q. The fact is you were promised you would not be prosecuted if you testified in this case, isn't that true?

"A. If it was, it was between my lawyer. I understood it not to be that way, no.

"Q. You understand what the word immunity means, don't you?

"A. Yes, I do."

Further, the defense presented witnesses to show that Nemerovsky had authority to withdraw from the corporate accounts, and that Nemerovsky took cash paid by customers and put it in his pocket. In light of the evidence that was admitted that tended to show Nemerovsky's bias, the evidence excluded was cumulative and its exclusion cannot be considered error. The ninth assignment of error is not well-taken.

### Assignment of Error X

"The court erred in. failing to declare a mistrial at various points during the trial based upon the cumulative effect of prosecutor's actions amounting to prosecutorial conduct depriving defendant of a fair trial."

The actions which appellant argues as having had a cumulative effect amounting to prosecutorial misconduct consist of several instances of leading questions on direct examination; a reference to decorations in appellant's house upon cross-examination; an allegation of misstatement of the law; and a comment made in closing argument. We will address each of these in turn.

As to the leading questions, not all were objected to; of those that were, some of the objections were sustained and the questions were rephrased — the other objections were either premature or overruled. As to the remark regarding the decorations, the court sustained an objection on the basis of irrelevance. Further, we find no evidence of a misstatement of the law on the page of the transcript cited by appellant.

As to the remark during closing argument, the prosecutor stated to the jury: "Don't let her do to you what she has been attempting to do to these victims." Defense counsel immediately objected and the court instructed the jury to disregard the remark, reminding them that final argument is not evidence. "The prosecution is normally entitled to a certain degree of latitude in its closing remarks." *State* v. *Smith* (1984), 14 Ohio St. 3d 13, 14 OBR 317, 318, 470 N.E. 2d 883, 885. Although we do not consider the comment to necessarily fall outside of the latitude allowed, compare *State* v. *Carver* (1972), 30 Ohio St. 2d 280, 291, 59 O.O. 2d 343, 349, 285 N.E. 2d 26, 33-34, the trial court's actions were sufficient to correct any false impression the jury may have received.

"The conduct of a prosecuting attorney during trial cannot be made a ground of error unless that conduct deprives the defendant of a fair trial." *State* v. *Papp* (1978), 64 Ohio App. 2d 203, 211, 18 O.O. 3d 157, 162, 412 N.E.

2d 401, 407 (citations omitted). It must be clear beyond a reasonable doubt that absent the conduct of the prosecution, the jury would have found the defendant guilty. *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, 266-268, 15 OBR 379, 402-404, 473 N.E. 2d 768, 792-794. We do not find that the cumulative effect of the prosecutor's actions amounted to misconduct; the appellant received a fair trial and, absent the conduct complained of, it is clear beyond a reasonable doubt that the jury would have reached a verdict of guilty. The tenth assignment of error is overruled.

### Assignment of Error XI

"The trial court erred when it permitted the prosecution to comment during final argument upon evidence relevant to three counts which had previously been dismissed by the court and in overruling appellant's motion for a mistrial based thereon."

Appellant contends that, in final argument, the prosecutor commented on evidence that had previously been excluded. The record does not support this contention. The specific comment complained of was:

"She was also having employees open other accounts. In one day she had Julia Wagner open three accounts, three different banks."

The court had previously granted a Crim. R. 29 motion on one count of passing a bad check on the grounds that the payee had been advised to wait a day before cashing the check because the account contained insufficient funds. The check, stamped "N.S.F.," was then excluded. However, the testimonial evidence referred to by the prosecutor goes to the issue of Vrona's control of Vacation Travel, and relates to the fact that she directed employees to open checking accounts in their own names to conduct agency business.

Dismissal of the bad check charge and exclusion of the check from evidence did not affect the relevance of the testimonial evidence to the issue of control. This assignment of error is not well-taken.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

GEORGE, J., concurs.

BAIRD, P.J., dissents.

GEORGE, J., concurring. This concurrence is written in response to the dissent addressing the seventh assignment of error. When the new theft statute, R.C. 2913.02, became effective in 1974, it consolidated the several common-law theft offenses (larceny, larceny by trick, false pretenses, embezzlement, and conversion) into a single offense and also added a new theft offense (larceny by threat). R.C. 2913.02 states in pertinent part:

"(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

"(1) Without the consent of the owner or person authorized to give consent;

"(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

"(3) By deception;

"(4) By threat."

This statute is intended to prohibit the non-consensual taking of property by whatever means. *State* v. *Mitchell* (1983), 6 Ohio St. 3d 416, 419, 6 OBR 463, 465, 453 N.E. 2d 593, 595.

In this case, Vrona was charged with deceptively exerting control over property which she lawfully obtained. Under prior law, in order to charge a person with larceny by trick or false pretenses, the person must have obtained possession of the property by a

false or fraudulent misrepresentation. However, R.C. 2913.02 has broadened this type of theft to include situations where the person exerts control over the property by deception after the property was first lawfully obtained.

In *State* v. *Graven* (1978), 54 Ohio St. 2d 114, 127, 8 O.O. 3d 113, 120-121, 374 N.E. 2d 1370, 1378, Justice William B. Brown points out in his dissent, discussing theft by deception, what the state must establish:

"* * * (1) that the accused knowingly obtained or exerted control over property or services; (2) that the accused obtained or exerted such control with purpose to deprive; (3) that the accused obtained or exerted such control by knowing deception; and (4) that such knowing deception was the result of misrepresentation or other conduct creating a false impression in another."

In this case, the intent to deprive was not formed when the checks legally came into Vrona's possession. The intent to deprive was formed at the point in time when she exerted control over the checks in a deceptive manner. R.C. 2913.02 encompasses two acts: the act of obtaining control over property, or the act of exerting control over property, either of which is accomplished by one or more of the models set out in the statute under subsections (1) through (4). Further, under the facts of this case, the state could have charged Vrona with violating R.C. 2913.02(A)(2), for converting the prop-

erty to her own use. It did not. Instead, the state charged Vrona under R.C. 2913.02(A)(3), for deceiving the victim-travelers as to the whereabouts of their refunds which Vrona had converted to her own use. Vrona was properly charged under R.C. 2913.02 (A)(3) with exerting control over the property. Assignment of error seven is properly overruled.

BAIRD, P.J., dissenting. Theft by deception normally requires proof that the actor, with purpose to deprive the owner of his property, knowingly obtained that property by deception.[1] There is no evidence in this case that these elements took place at the same time, a deficiency to which the state responds that no such coincidence is necessary. The state's theory, that these elements need not occur at the same time, would seem to support the idea that every debtor who lies to his creditor about repayment is guilty of theft by deception. Lest our jails be filled with souls who have falsely stated that "the check is in the mail," it should be pointed out that the state's theory does not accurately reflect the law.

Thus, assignment of error seven would properly be sustained as to the five theft-by-deception counts. Since there has been no response relative to the other two counts, it appears that they too would fail scrutiny as to the sufficiency of proof.

I would sustain assignment of error seven and reverse the convictions.

---

[1] As noted elsewhere, the theft statute could conceivably provide for a crime which would consist of proof that an actor, with purpose to deprive the owner of his property, knowingly exerted control over that property by means of deception. Here, however, the deception did not enable the defendant to exert control over the property; she already had control over the property by the time of the deception, and the deception did nothing to add to her control

of it. In any case, the elements must coincide in time.

It is noted that it was not charged here that the defendant, with purpose to deprive the owner of his property, knowingly exerted control over that property beyond the express or implied consent of the owner, which is that combination of the statutory elements which is designated to cover conversion and embezzlement.