OPINION
{¶ 1} Defendant-appellant Donald D. Hall appeals from his conviction for Workers' Compensation Fraud. Hall contends that his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence. He also contends that the trial court erred by failing to grant his motion for a continuance and by admitting certain documentary evidence.
 {¶ 2} We conclude that the conviction is supported by the evidence. We further conclude that the trial court did not err in denying Hall's motion for a continuance. Finally, while the trial court did err in admitting some of Hall's bank records, this error was harmless. The judgment of the trial court is affirmed.
 I {¶ 3} In March of 1989, Hall submitted a claim to the Bureau of Workers' Compensation (BWC) for disability benefits based upon his representation that he was totally temporarily disabled and unable to work due to a laceration to his finger sustained while he was working as a heating and air-conditioning technician. Hall continued to receive benefits from July 31, 1997, to May 28, 1998, and from September 22, 1998, until September 30, 1999. Although Hall was not receiving benefits in the form of money, he was receiving benefits in the form of credits against an overpayment of workers' compensation benefits that he had previously received. There is evidence in the record from which the trial court could find, as it did, that Hall knew he was receiving these credits.
 {¶ 4} The BWC determined that while Hall was receiving benefits he was engaged in the business of buying used cars, repairing them, and selling them. The BWC also determined that Hall had failed to disclose that he was engaging in work, and that he, in fact, affirmatively represented on forms submitted to the BWC that he was not engaged in any type of employment. The BWC concluded that Hall had received a total of $31,587.34 in benefits while he was engaged in the business of repairing and selling cars.
 {¶ 5} Hall was indicted in December, 1999, on one count of Workers' Compensation Fraud, in violation of R.C. 2913.48(A)(1). On July 17, 2001, Hall filed a motion seeking a continuance of his scheduled trial date. In his motion, Hall claimed that on the preceding day — one week before trial — the State filed a Bill of Particulars containing "a theory of the case that [Hall] had not prepared to defend," and had also "turned over hundreds of new pages of records and other discoverable material." The motion was denied, and Hall was tried, by the court, on July 23 and 24, 2001. Following trial, the court found Hall guilty as charged, and sentenced him to five years of community control sanctions. From his conviction and sentence, Hall appeals.
 II {¶ 6} Hall's First and Second Assignments of Error are as follows:
 {¶ 7} "The trial court's judgment is not supported by sufficient evidence to sustain the conviction.
 {¶ 8} "The judgment of the trial court is against the manifest weight of the evidence."
 {¶ 9} Hall contends that the State did not present sufficient evidence to support a conviction for Workers' Compensation Fraud, and that his conviction is against the manifest weight of the evidence. Specifically, he argues that the State did not present any evidence linking him to the buying or selling of any vehicles, and therefore did not present sufficient evidence to establish that he was engaged in any employment while receiving workers' compensation benefits. Hall also argues that any evidence regarding his employment was not credible. In reviewing a challenge to the sufficiency of the evidence, we must determine whether any reasonable trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the State had proven the essential elements of the crime beyond a reasonable doubt. See State v. Jenks (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492.
 {¶ 10} When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997), 78 Ohio St.3d 380, 387,1997-Ohio-52, citation omitted. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." Id., citation omitted. When reviewing a trial court's judgment under a manifest weight standard of review, "[j]udgment supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279.
 {¶ 11} Hall was convicted of Workers' Compensation Fraud pursuant to R.C. 2913.48(A)(1), which provides that: "No person, with purpose to defraud or knowing that the person is facilitating a fraud shall * * * [r]eceive workers' compensation benefits to which the person is not entitled."
 {¶ 12} "Defraud" is defined as "knowingly [obtaining], by deception, some benefit for oneself or another, or knowingly [causing], by deception, some detriment to another. R.C. 2913.01(B)." "Deception" is defined as "knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact." R.C.2913.01(A).
 {¶ 13} In this case, the State presented evidence that Hall received workers' compensation benefits and that he regularly signed forms indicating that he remained disabled. The forms also contained statements that informed Hall of the need to report any return to employment.
 {¶ 14} The State also introduced the testimony of Jerry Johnson, owner of a salvage yard and of Dayton-Xenia Auto Parts car lot. Johnson testified that during the times relevant to this action Hall regularly visited the car lot and salvage yard and that Hall purchased "a lot of parts" from the salvage yard. He further testified that Hall signed a purchase order as buyer of one car and that his son and ex-wife, Pam Skiver, also signed purchase orders for eight other cars. Johnson testified that Hall was always present with his ex-wife when she purchased a vehicle. Johnson also testified that Hall introduced him to a person purporting to be named Arthur Kilgore. He stated that four cars were sold to Kilgore, who never produced any identification. Johnson testified that Hall would take the purchase order forms home for Kilgore to sign, and that Hall would bring them back in signed by Kilgore. Johnson never saw Kilgore after initially being introduced to him. Finally, Johnson testified that Hall would either drive the cars off the lot or tow them off.
 {¶ 15} The State also presented the testimony of Heather Goodorf, a credit representative for the Dayton Daily News. She testified that during the relevant time periods, Hall used his name in placing advertisements for the sale of two vehicles. She further testified that sixteen advertisements were placed for the sale of cars with Hall's address given as the seller's address, while two were placed using Hall's telephone number. Goodorf testified that anyone who placed more than five advertisements per year is charged a higher rate, that the newspaper billed Hall for the higher rate, and that he eventually agreed to pay a portion of the higher rate.
 {¶ 16} The State also introduced Hall's bank records from National City Bank, which showed numerous checks paid and deposits made during the relevant time period. The deposits made to Hall's National City Bank account during the relevant time period exceeded $99,000. The records also show that at least forty checks were drawn and that all of the checks were either made payable to auto supply stores or were for services related to automobiles.
 {¶ 17} Danny Helm also testified for the State. Helm testified that his mother, Pam Skiver, is Hall's girlfriend. He also testified that during the relevant time frames, he would visit a warehouse where Hall kept "a bunch of tore apart cars," and that Hall would "be workin' on one or tearin' interior outta one" in order to "fix `em up and resell `em." Helm testified that he would help Hall work on some of the vehicles, including repairing axles, transmissions and putting engines into the cars. Helm testified that the repair jobs were physically demanding, but that he never noticed Hall having any difficulties making the repairs. Helm testified that Hall would wear latex gloves while working on the cars to keep dirt off his hands. Helm testified that Hall said he did so in order to keep his doctors from seeing grease and grime on his hands. Hall also told Helm that he bought junk cars to fix and sell and that he could make a "couple thousand dollars" from the sale of a repaired vehicle. Helm testified that his mother would wash, wax and clean the cars.
 {¶ 18} The State presented the testimony of Dion Kinley, who testified that he responded to one of Hall's advertisements in the Dayton Daily News, and that he personally purchased a vehicle from Hall on May 25, 1999.
 {¶ 19} In sum, the State presented evidence that Hall had numerous vehicles in his warehouse during the relevant time periods, that he was actively engaged in making repairs to the cars, that he placed advertisements for the sale of the cars, that he made money from the sale of the vehicles, that money was deposited into his bank accounts, that checks were drawn for auto-related purchases, and that this was done while Hall was receiving workers' compensation benefits. We conclude that the evidence presented is more than sufficient to show that Hall was engaged in repairing and selling used vehicles and that he knowingly obtained benefits while withholding information regarding, and actively misrepresenting, his employment status. We further find that the Hall's conviction is not against the manifest weight of the evidence, which is compelling.
 {¶ 20} Hall's First and Second Assignments of Error are overruled.
 III {¶ 21} Hall's Third Assignment of Error states as follows:
 {¶ 22} "The trial court erred by failing to grant defendant's motion for a continuance."
 {¶ 23} Hall contends that the trial court erred by denying his request for a continuance of his trial.
 {¶ 24} "The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge[, and an] appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." State v. Unger (1981), 67 Ohio St.2d 65,67, citations omitted. In determining whether a trial court abused its discretion when ruling on a motion for continuance, a reviewing court must look at the relevant factors, which include: (1) the length of the delay requested; (2) whether other continuances have been requested and granted; (3) any inconvenience to litigants, witnesses, opposing counsel and the court; (4) whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; (5) whether the defendant contributed to the circumstances giving rise to the request for a continuance; and (6) other factors depending on the unique circumstances of each case. Id. at 68.
 {¶ 25} In this case, the trial court overruled the motion upon the finding that the bulk of the materials provided by the State on July 16 consisted of Hall's bank records, of which Hall should have been aware. The trial court also noted that Hall had previously asked for, and received, seven separate continuances.
 {¶ 26} From our review of the record, we note that defense counsel conceded that most of the records in question consisted of Hall's bank records, to which Hall had previously had access, and that all of the records in question had been reviewed. There is nothing in the record to indicate that defense counsel was unable to prepare adequately for trial, or that Hall was prejudiced by the denial of the motion. With regard to the bill of particulars, we find no support for the claim that counsel was not prepared to defend the case. We cannot say, based upon the record before us, that the trial court abused its discretion in denying the motion.
 {¶ 27} Hall's Third Assignment of Error is overruled.
 IV {¶ 28} Hall's Fourth Assignment of Error is as follows:
 {¶ 29} "The trial court erred in admitting bank statements, Exhibits 17 and 18, over defendant's objections."
 {¶ 30} Hall contends that the trial court erred in admitting his bank statements at National City Bank and at Fifth Third Bank because the records were not sufficiently authenticated pursuant to Evid.R. 803(6).
 {¶ 31} The admission or exclusion of evidence rests in the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173,180. An abuse of discretion implies that the judge's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore,
(1983), 5 Ohio St.3d 217, 219.
 {¶ 32} Evid.R. 803(6) provides as follows:
 {¶ 33} "The following are not excluded by the hearsay rule, even though the declarant is available as a witness: * * * A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness * * * unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. * * * "
 {¶ 34} In order to lay a proper foundation for the admission of a business record, the proponent of the document must demonstrate that: (1) the record was prepared by an employee of the business who had a duty to report the information; (2) the person providing the information contained in the record had personal knowledge of the event or transaction reported; (3) the record was prepared at or near the time of the event or transaction; and (4) it was a regular practice or custom of the business in question to prepare and retain the type of record.McCormick v. Mirrored Image, Inc. (1982), 7 Ohio App.3d 232, 233.
 {¶ 35} "The phrase `qualified witness' should be broadly interpreted. * * *" State v. Vrona (1988), 47 Ohio App.3d 145, 148. "The witness providing the foundation need not have firsthand knowledge of the transaction. Rather, it must be demonstrated that the witness is sufficiently familiar with the operation of the business and with the circumstances of the record's preparation, maintenance and retrieval, that he can reasonably testify on the basis of this knowledge that the record is what it purports to be, and that it was made in the ordinary course of business consistent with the elements of Rule 803(6). * * *." Id., citations omitted.
 {¶ 36} The transcript reveals that the State introduced the testimony of Tanya Griffith as the representative of National City Bank. Griffith, a "retail help desk specialist" testified that it is the Bank's ordinary business practice to make copies on a daily basis of every transaction for every account. She also testified that these copies are placed on microfiche and saved for seven years. She testified that as part of her job she has regular access to bank records and authority to retrieve bank records from the Bank's computer system. She further testified that the records produced were copies of Hall's account with National City Bank, and that Hall was the only signer on the account. From our review of the record, we conclude that Griffith is an "other qualified witness," and that she was therefore able to lay a sufficient foundation for the introduction of Hall's National City Bank account statements. Therefore, we find that the trial court did not abuse its discretion in admitting this exhibit.
 {¶ 37} Conversely, we conclude that the trial court did err in admitting Hall's records from Fifth Third Bank. A review of the testimony of the representative for Fifth Third Bank demonstrates that although she had access to bank records, she was unable to testify how the data reported on the records was compiled or generated. Additionally, she testified that she did not check to determine whether the account, which was held in the names of "Donald D. or D. Dean Hall," carried Hall's social security number or whether the social security number was that of Hall's son.
 {¶ 38} However, we find any error in admitting the Fifth Third Bank account records harmless. Even without the admission of these bank records, there is compelling evidence in the record that Hall was engaged in the business of repairing and selling used cars during the relevant time periods that he was receiving BWC benefits. Additionally, the records properly admitted from National City Bank, which were records of an account solely in Hall's name, were sufficient to corroborate the testimony in this case. We find, beyond reasonable doubt, that if the Fifth Third Bank account records had been excluded, the trial court would have reached the same verdict, based upon all the other evidence properly before the court.
 {¶ 39} Hall's Fourth Assignment of Error is overruled.
 V {¶ 40} All of Hall's Assignments of Error having been overruled, the judgment of the trial court is Affirmed.
WOLFF and YOUNG, JJ., concur.