OPINION
{¶ 1} Appellant-defendant, Jerry Messer, Jr., appeals his conviction in the Clermont County Court of Common Pleas for unlawful sexual conduct with a minor. We affirm.
 {¶ 2} On the night of January 19, 2002, appellant, born on July 11, 1976, was involved in sexual encounters with two minors, Kaylee C. and Atiyah T., who were ages 14 and 15 respectively. Kaylee and Atiyah were cousins who lived in the same residence with Melody C., Kaylee's mother and Atiyah's legal guardian. The two girls had planned to spend the night with Christine W., Atiyah's friend, to help her baby-sit Christine's younger sister, Desiree.
 {¶ 3} Anthony, Christine's father, picked the girls up and brought them to his apartment. Appellant and Hans Nolte, Anthony's friend, were already present. Kaylee and Atiyah testified that they both drank alcoholic beverages and smoked marijuana with the adults when they arrived. Later, appellant and Anthony left the apartment to go to two bars. During that time, Hans Nolte and Atiyah had sexual intercourse together.
 {¶ 4} Appellant and Anthony returned around 2:00 A.M. An hour or so later, after most of the occupants in the apartment had gone to sleep, appellant and Kaylee were in the living room watching television together. Appellant began kissing Kaylee and sexually propositioned her. She refused and told him that she was only 14. Appellant persisted. She finally consented to appellant's sexual advances so long as her own participation was passive. Appellant removed Kaylee's pajama pants and undergarments and engaged in cunnilingus. After appellant stopped, he told her that he had to use the bathroom.
 {¶ 5} Appellant left the living room and entered Desiree's room where Atiyah, Christine, and Desiree were sleeping. Atiyah woke up when she realized that her vagina was being digitally penetrated by appellant. Appellant then climbed atop the bed, positioned himself above Atiyah, and inserted his penis into her vagina. They had sexual intercourse for several minutes. Atiyah was unsure as to whether appellant ejaculated within her. After he stopped, appellant returned to the living room where he was accompanied by Atiyah shortly thereafter. Atiyah talked with Kaylee and invited her back to Desiree's room. A little while later, Atiyah was again awakened, this time by Anthony. He pulled Atiyah from the bed and escorted her to his bedroom. There, the two had sexual intercourse.
 {¶ 6} The next morning, Kaylee and Atiyah returned home without telling anyone what had occurred that night. Later that week, Melody was doing laundry when she noticed one of Atiyah's undergarments was severely stained and emanated a strong, pungent odor. Melody placed the panty in an airtight freezer bag to contain the odor. She feared that the stains and smell could have been the product of some combination of unsanitary or infected conditions.
 {¶ 7} Nearly a month passed when Kaylee finally disclosed to her psychological therapist the events that transpired in January. The therapist called Melody who promptly reported the incident to the police. Melody also turned over Atiyah's stained underwear to the Union Township police who were in charge of the investigation. A DNA analysis revealed that the material on the panties was semen not belonging to appellant.
 {¶ 8} On July 17, 2002, appellant was indicted on seven counts: Counts One through Four for unlawful sexual conduct with a minor pursuant to R.C. 2907.04(A) and Counts Five, Six and Seven for corrupting another with drugs pursuant to R.C. 2925.02(A)(4)(a). Count Four was dismissed prior to appellant's jury trial in July 2003, and the remaining counts were renumbered four, five and six. During the trial, the court granted appellant's Crim.R. 29 motion with respect to the issue of corrupting another with drugs, thus dismissing Counts Four, Five and Six. Counts One, Two, and Three represented the charges concerning the cunnilingus with Kaylee, the digital penetration of Atiyah, and the sexual intercourse with Atiyah. The jury found appellant guilty of these remaining counts. The trial court imposed a two-year sentence for each count and order that the sentences were to be served consecutively, totaling a six-year prison term. Appellant was also classified as a sexual predator.
 {¶ 9} Appellant now appeals raising three assignments of error.
 {¶ 10} Assignment of Error No. 1:
 {¶ 11} "The trial court erred by denying the defendant's motion for acquittal at the close of the prosecution's case and by allowing the prosecution to re-open its case, without a request to do so, after both the prosecution and the defense had rested."
 {¶ 12} Appellant argues that the trial court abused its discretion when it reopened the case without any request by the prosecution to do so and after both parties rested. We dis-agree. Evid.R. 611(A) provides that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence." It is within the trial court's discretion to allow a party to reopen a case to present additional evidence, and thus, such decision will not be reversed absent an abuse of discretion. Columbus v. Grant (1981), 1 Ohio App.3d 96, 97. An abuse of discretion connotes more than an error in law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Barnes, 94 Ohio St.3d 21, 23, 2002-Ohio-68.
 {¶ 13} In the case at bar, the trial court determined that it had erred when it initially admitted testimony from an investigating officer regarding appellant's age obtained from appellant's Bureau of Motor Vehicle records. The trial court allowed both sides to reopen their cases because both the state and the defense proceeded after this erroneous determination. We find that the decision to reopen was well within the trial court's discretion as a means of redressing its previous evidentiary ruling.
 {¶ 14} Appellant's argument rests on the mistaken premise that the close of his case acts as a dispositive, temporal threshold precluding the trial court's decision to reopen. However, appellant does not cite any case law to support his position. On the contrary, trial courts have been granted wide discretion in ordering a trial's proceedings. InColumbus v. Grant, the Tenth District found that the trial court did not abuse its discretion when it reopened the state's case for the purposes of allowing the prosecution to present evidence specifically identifying the defendant despite the fact that the defense had already rested and moved for judgment of acquittal. Grant, 1 Ohio App.3d at 97. See, also, State v. Grundstein (App. 1943), 46 Ohio Law Abs. 175 (no error when trial court reopened case admitting evidence of stolen property value following the close of evidence and principal arguments by both the state and defendant). Appellant's first assignment of error is overruled.
 {¶ 15} Assignment of Error No. 2:
 {¶ 16} "The trial court erred by admitting a booking sheet from the sheriff's department as a business records exception to the hearsay rule."
 {¶ 17} In his second assignment of error, appellant argues that the booking sheet used to present evidence concerning appellant's age should have been excluded because it was not authenticated by an appropriate witness. The admission or exclusion of evidence rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. Absent an abuse of discretion, an appellate court will not disturb a trial court's ruling as to the admissibility of evidence. State v. Issa, 93 Ohio St.3d 49, 64, 2001-Ohio-1290.
 {¶ 18} Evid.R. 803(6) provides in part:
 {¶ 19} "The following [is] not excluded by the hearsay rule, even though the declarant is available as a witness:
 {¶ 20} "* * *
 {¶ 21} "(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term `business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."
 {¶ 22} Proper foundation for the business record exception must be "laid by a proper custodian or witness sufficiently familiar with the operation of the business." State v. Davis (1991), 62 Ohio St.3d 326, 343. The witness must demonstrate that he is also sufficiently familiar with the circumstances of the preparation, maintenance, and retrieval of the record in order to reasonably testify on the basis of this knowledge that the record is what it purports to be, and was prepared in the ordinary course of business. State v. Corley (Jan. 23, 1995), Madison App. No. CA94-04-015, citing State v. Vrona (1988), 47 Ohio App.3d 145, 148.
 {¶ 23} In Davis, the Ohio Supreme Court found an Illinois booking sheet containing the defendant's physical description was improperly admitted when the prosecution sought to lay foundation for admission through the testimony of an Ohio police officer. The witness's testimony was limited to the fact that he was the officer that obtained the booking record from an Illinois state agency. He had no other contact with or specific knowledge of the record keeping system used in Illinois.
 {¶ 24} In the case at bar, the state laid foundation through the testimony of Sergeant Mike McConnell, supervisor at the Clermont County Jail. He testified that he was familiar with the jail's record keeping system through regular, daily contact with the system. He also provided an extensive illustration of the regular booking procedures by which prisoners' information is recorded immediately upon arrival. On the basis of that knowledge, Sergeant McConnell authenticated appellant's booking sheet that contained appellant's date of birth. We find that the trial court did not err when it admitted the booking sheet into evidence. Appellant's second assignment of error is overruled.
 {¶ 25} Assignment of Error No. 3:
 {¶ 26} "The trial court erred by denying the defendant's motion for acquittal under rule 29 because the verdict was against the weight of the evidence."
 {¶ 27} Appellant conflates separate issues in his third assignment of error, alleging the improper denial of his Crim.R. 29 motion for acquittal but using terminology reserved for a manifest weight of the evidence claim.[1] Because appellant's argument focuses on the weight that should be accorded the DNA evidence, we have construed this third assignment of error to challenge whether the conviction was against the manifest weight of all of the evidence.
 {¶ 28} An appellate court, in considering whether a conviction was against the manifest weight of the evidence, must weigh the evidence and all reasonable inferences from it, consider the credibility of the witnesses and determine whether in resolving conflicts, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, citing State v. Martin
(1983), 20 Ohio App.3d 172, 175. This discretionary power should be exercised only in the exceptional case where the evidence weighs heavily against conviction. Id.
 {¶ 29} An appellate court will not reverse a judgment as being against the manifest weight of the evidence in a jury trial unless it unanimously disagrees with the jury's resolution of any conflicting testimony.Thompkins at 389. When reviewing the evidence, an appellate court must be mindful that the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 30} In the case at bar, the DNA test revealed that Atiyah's undergarment contained no genetic material from appellant. However, even though the DNA test does not inculpate appellant, the results do not require the reverse inference, namely, that the test exculpates appellant. Both victims testified to appellant's sexual conduct with them that night. Kaylee identified certain tattoos on appellant's body. The investigating detective interviewed appellant regarding the night in question and explained that appellant did not deny the acts. Instead, appellant told the detective that he was too intoxicated to remember what happened that night. Furthermore, Atiyah provided testimony that explained the presence of semen belonging to someone or some people other than appellant in her undergarment. Appellant testified on his own behalf and denied any sexual contact between himself and the victims that night.
 {¶ 31} We do not find that appellant's conviction was against the manifest weight of the evidence. The DNA test result provided no conclusive exculpatory evidence. The trier of fact was in the best position to judge the weight of the evidence and the credibility of the witnesses, and we cannot say that the jury's decision created a manifest miscarriage of justice requiring reversal based upon the record before us. Accordingly, appellant's third assignment of error is overruled.
 {¶ 32} Judgment affirmed.
Young, P.J., and Valen, J., concur.
Valen, J., retired, of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution. At the time this case was submitted, Judge Valen was a duly elected judge of the Twelfth District Court of Appeals.
[1] In reviewing a trial court's denial of a Crim.R. 29 motion, an appellate court applies the same test as when it reviews a challenge based on the sufficiency of the evidence. State v. Thompkins, 78 Ohio St.3d 380,386, 1997-Ohio-52. The relevant inquiry for a sufficiency claim is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Carter,72 Ohio St.3d 543, 553, 1995-Ohio-104.