**The STATE of Ohio, Appellee,**

**v.**

**HIRTZINGER, Appellant.**

[Cite as *State v. Hirtzinger* (1997), 124 Ohio App.3d 40.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 96–CA–120.

Decided Oct. 31, 1997.

*Michael Sheils,* Springfield Chief Prosecutor, and *Kathryn A. Reckley,* Assistant City Prosecutor, for appellee.

*Dennis Lieberman,* for appellant.

BROGAN, Judge.

Jeffrey Hirtzinger appeals from his conviction in the Clark County Municipal Court on two counts of criminal trespass in violation of R.C. 2911.21(A)(1).

Hirtzinger argues that the evidence was insufficient to support his conviction. He further argues that the trial court erred in admitting prosecution evidence that was improperly withheld from the defense and inadmissible under the Rules of Evidence. We find that the jury's verdict was supported by both a sufficiency and the weight of the evidence. We further find that the court did not err to the prejudice of the defendant in admitting prosecution evidence not provided during discovery. The court did err, however, in admitting hearsay testimony in the form of a cellular telephone bill. Because we cannot find that error harmless beyond a reasonable doubt, we reverse and remand the cause for a new trial.

I

The relevant facts, drawn from the record below, are as follows. Appellant, Jeffrey Hirtzinger, was divorced from his wife of sixteen years, Paula Hirtzinger, in April 1996. A Standard Order of Visitation issued by the Domestic Relations Division of the Clark County Court of Common Pleas granted Mr. Hirtzinger rights of visitation with the couple's children. These rights included visitation on alternate weekends between Fridays at 6:00 p.m.

On Friday, June 21, 1996, Mr. Hirtzinger appeared at Mrs. Hirtzinger's residence to assert his visitation rights for that weekend. Mr. Hirtzinger brought with him a deputy sheriff, evidently to ensure that his rights would be recognized. Testimony differed as to whether he arrived at 6:25 or 6:40 p.m. In any event, Mrs. Hirtzinger ordered him off the property and told him not to come back again. Mr. Hirtzinger then left the property.

From this point chronologically, the testimony diverges sharply. The first count of trespass stems from the events of Sunday, June 23, 1996, two days after the confrontation over visitation. Mrs. Hirtzinger testified to the following sequence of events occurring on that day. At sometime after 10:00 p.m., Mrs. Hirtzinger was returning home from a shopping trip with her mother, Sally Dinnen, when she saw a vehicle coming out of her driveway. She recognized the vehicle as her husband's turquoise Ford Ranger. She immediately dialed her husband's cellular telephone on her own cellular phone. When he answered, she asked him what he was doing on her property. He responded by laughing and hanging up. Mrs. Hirtzinger's testimony was confirmed by the testimony of Sally Dinnen. The divorced couple's daughter, Jenny, also testified that, from the home, she saw her father's truck turn around in the driveway.

Mr. Hirtzinger testified that he was at C.J. Brown Reservoir on June 23, at 10:30 p.m. He further testified that he did not receive a cellular telephone call from his wife that night, but his answering service would receive the call if he did not. Mr. Hirtzinger's testimony was corroborated by two other witnesses, Thomas and Rilla Fogle, friends of the defendant. Both testified that on June 23,

the defendant was with them, and a large party of other people, at a picnic and boating outing. Mr. Fogle testified that they left the reservoir when it turned dark, approximately between 9:30 and 9:45 p.m. Mrs. Fogle testified similarly, indicating that they left around 9:30 p.m.

The second count of trespass was for Sunday, July 7, 1996, two weeks later. Mrs. Hirtzinger testified that, at approximately 8:30 p.m., Mr. Hirtzinger drove his truck into her driveway and then sat there for a number of minutes. Then he drove away. Her testimony was corroborated by Mrs. Dinnen, who also saw the truck on the property that day. Mr. Hirtzinger testified that he was boating again that day at C.J. Brown Reservoir with the Fogles. Their testimony confirmed his version of events and indicated that they did not leave the reservoir again until after dark that night.

During trial of these charges, counsel for Mr. Hirtzinger questioned Mrs. Hirtzinger about the cellular telephone call she claimed to have made on June 23. He asked her whether she had an itemized billing service for her cellular calls. She replied that she did. On redirect examination of Mrs. Hirtzinger, the prosecution introduced the cellular telephone bill into the evidence. It is undisputed that during discovery, the prosecution did not provide a copy of the bill to the defense or provide the defense with a chance to examine it. Defense counsel objected to the evidence on this basis. The court overruled the objection, finding that the evidence did not prejudice the defendant's case sufficiently to warrant exclusion as a sanction. The bill showed that Mrs. Hirtzinger placed a cellular telephone call at 10:30 p.m. on June 23 to her ex-husband's mobile phone, and the call lasted less than one minute. Defense counsel objected to Mrs. Hirtzinger's competency in authenticating the bill and objected to the use of the bill as hearsay in showing when the call was placed. Both objections were overruled.

## II

In his first assignment, appellant asserts the following error:

"There was insufficient evidence to support a conviction[.]"

Appellant's arguments in support of this assignment are twofold. First, he argues that the prosecution failed to prove that the defendant lacked privilege to enter upon his wife's property. His second argument is that, because there was conflicting testimony between the state's witnesses and defense witnesses as to Mr. Hirtzinger's whereabouts on the dates in question, the evidence supporting conviction was insufficient.

In regard to the first argument, appellant is correct to point out that the state must prove absence of privilege as an element of its case for criminal

trespass under R.C. 2911.21. *State v. Newell* (1994), 93 Ohio App.3d 609, 611, 639 N.E.2d 513, 514–515. Therefore, it must prove the absence beyond a reasonable doubt. *Id.* Here, however, Mr. Hirtzinger himself testified that his wife told him to leave the property and not come back. Moreover, there is no real dispute as to whether Mr. Hirtzinger had his former wife's permission to enter upon the property on the dates in question. Appellant argues, however, that the order of visitation granted him a legal right to enter at any time upon the premises occupied by his minor children. To the contrary, a visitation order gives only restricted rights to enter such property for the limited purpose of visitation and during times specified in the order. *State v. Imperatore* (1994), 98 Ohio App.3d 384, 387, 648 N.E.2d 842, 844–845. The times relevant to Mr. Hirtzinger's trespass conviction fell outside any of his specified visitation periods. Thus, this argument is unavailing.

Appellant's second argument in support of this assignment is that the conflicting testimony rendered the evidence insufficient to support his conviction. The inquiry relevant to an assignment of error based on insufficiency of the evidence is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. In this case, the jury could have reasonably believed the testimony of Mrs. Hirtzinger, her mother Sally Dinnen, and Jenny Hirtzinger. If there is credible testimony establishing a sequence of events upon which a conviction may rest, an inquiry into the sufficiency of evidence takes us no further. See *State v. Jennings* (Sept. 5, 1997), Montgomery App. No. 16280, unreported, 1997 WL 548740. Here, the testimony of the three state witnesses was certainly sufficient to support a reasonable juror's finding of guilt. Accordingly, appellant's first assignment of error is overruled.

## III

For the sake of analytical clarity, we address appellant's third assignment of error next. This assignment of error asserts:

"The trial court erred in overruling appellant's motion for acquittal."

Appellant argues in support of this assignment that his conviction was against the manifest weight of the evidence. As the Supreme Court recently reiterated, review of the sufficiency of evidence and review of the weight of evidence are independent functions of an appellate court involving different standards of legal analysis. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541, 546–547. An appellate court reviewing the weight of the evidence sits as a "thirteenth juror" and may, within its discretion, act upon a

disagreement with the jury's decision. *Thompkins, supra,* at 388, 678 N.E.2d at 547–548, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 41–43, 102 S.Ct. 2211, 2218–2219, 72 L.Ed.2d 652, 661–662. The appropriate standard of review requires a court to examine the entire record, "weig[h] the evidence and all reasonable inferences, conside[r] the credibility of witnesses, and determin[e] whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720; *Thompkins, supra,* at 387, 678 N.E.2d at 547. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.* Where judgment resulted from a jury trial, the Constitution of Ohio further limits the exercise of this discretionary power by requiring the concurrence of all three appellate judges. Section 3(B)(3), Article IV, Constitution.

■ From our review of the record in this case, we are unable to find a manifest miscarriage of justice that would merit a new trial. We note, as an instance supporting the judgment, that Mr. Hirtzinger's testimony as to his location on June 23 conflicts somewhat with the testimony of his alibi witnesses, the Fogles. Although Mr. Hirtzinger testified that he was at C.J. Brown Reservoir at 10:30 p.m., both Fogles testified that they left the reservoir approximately an hour earlier. Their testimony also indicated that the reservoir was not so distant as to make it impossible, or even unlikely, for Mr. Hirtzinger to reach his wife's residence by 10:30. The inadequacy of Mr. Hirtzinger's alibi for June 23 casts significant doubt on his version of the events of July 7. Moreover, nothing in the record casts doubt on the testimony of the state's witnesses. Thus, we are unable to conclude that the jury decision is against the weight of the evidence. Assignment of error number three is overruled.

IV

Appellant advances a second assignment of error:

"The trial court erred when it allowed the state to admit evidence which was improperly withheld from the defendant."

Appellant maintains that, by not revealing the cellular telephone bill to the defense before trial, the prosecution failed to comply with the dictates of Crim.R. 16(B)(1)(c), which provides:

"(c) Documents and tangible objects. Upon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, available to or within the possession,

custody or control of the state, and which are material to the preparation of his defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant."

The parties dispute whether the bill fell within the dictates of the discovery rule. Nevertheless, even assuming *arguendo* that the rule did require the prosecution to disclose the bill before trial, the trial court still had broad discretionary powers over what sanction to impose, if any. Crim.R. 16(E)(3) permits a trial court to decide the proper and just sanction for a party's failure to provide discovery. The rule provides:

 "(3) Failure to comply. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."

Because this rule commits the imposition of sanctions to the discretion of the trial court, it is necessary for an appellate court to find an abuse of that discretion to justify reversal. See *State v. Edwards* (1976), 49 Ohio St.2d 31, 42, 3 O.O.3d 18, 24, 358 N.E.2d 1051, 1059–1060, death sentence vacated on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155. In *State v. Parson* (1983), 6 Ohio St.3d 442, 6 OBR 485, 453 N.E.2d 689, the Supreme Court articulated a three-prong test for whether a trial court abuses its discretion under Crim.R. 16(E)(3): (1) whether the prosecution's failure to disclose was a willful violation of Crim.R. 16, (2) whether foreknowledge of the statement would have benefited the accused in the preparation of his defense, or (3) whether the accused was prejudiced by admission of the evidence. *Id.*, syllabus.

 In the instant case, the particular evidence in question was merely corroborative of Mrs. Hirtzinger's testimony that she made a phone call on June 23. The bill does not identify the location of the person who received the call, nor does it identify who answered the phone. Indeed, appellant was able to testify that his answering service would have picked up the call if he did not. Thus, we are unable to find that the trial court erred in finding that the admission of the evidence was not prejudicial to the defendant. Furthermore, the defendant has not shown that foreknowledge of the statement would have benefitted him in his preparation for trial. An appellate court is not permitted to speculate as to the possible effects that disclosure may have on the outcome of a trial. *State v. Finnerty* (1989), 45 Ohio St.3d 104, 109, 543 N.E.2d 1233, 1238. It should, instead, show deference to a trial court's determination of lack of prejudice unless

there was a clear abuse of discretion. Accordingly, we find that the second and third prongs of the *Parson* test do not justify reversal.

The more difficult question is whether the state's conduct in this case amounted to a willful violation of the discovery rule. The prosecution stated that it had no intention of using the bill until the defense questioned the witness about it during cross-examination. The appellant argues that this statement amounts to a confession of willfully reserving evidence. In *State v. Finnerty,* however, the Supreme Court found that, where the prosecution could not "reasonably anticipate" the defendant's use of peaceful-character testimony, it need not disclose before trial the witnesses it would use to rebut that testimony. *Id.* at 109, 543 N.E.2d at 1238. We believe that, in the instant case, the eventuality upon which the prosecution's use of undisclosed evidence was predicated—*i.e.* the cross-examination of Mrs. Hirtzinger as to the bill's existence—was sufficiently remote to fall within the rule of *Finnerty.* Therefore, we do not find willful misconduct on the part of the prosecution.

 We also find significance in the fact that appellant's trial counsel did not ask for a continuance when presented with the evidence. Instead, he asked for total exclusion of the evidence. "A continuance, upon proper motion, is a favored method to avoid prejudice which may flow from a failure to provide discovery." *State v. Parks* (1990), 69 Ohio App.3d 150, 155, 590 N.E.2d 300, 303. Where a party fails to ask for a continuance, a trial court may properly conclude that the defendant is prepared to proceed. *Edwards, supra,* 49 Ohio St.2d at 43, 3 O.O.3d at 24–25, 358 N.E.2d at 1060. Furthermore, "no prejudice to a criminal defendant results where an objection is made at trial to the admission of undisclosed discoverable evidence on the basis of surprise but no motion for a continuance is advanced at that time." *State v. Wiles* (1991), 59 Ohio St.3d 71, 80, 571 N.E.2d 97, 111.

For the foregoing reasons, we cannot find that the trial court abused its discretion in allowing the cellular telephone record into the evidence under Crim.R. 16. Appellant's third objection is overruled.

V

Appellant fifth assignment of error also relates to the cellular telephone bill. The assignment states:

"The trial court erred in improperly admitting evidence without a competent witness to testify to its creation, accuracy and custody."[1]

---

1. Appellant's Assignment of Error V appears in the amendment to appellant's brief permitted by order of this court, August, 27, 1997.

During trial, appellant's counsel objected that Mrs. Hirtzinger was incompetent to authenticate the bill and that her testimony as to its contents was hearsay. Appellant now contends that the bill should have been excluded as hearsay because Mrs. Hirtzinger was not qualified to authenticate the bill as a business record. Appellant further contends that this error was prejudicial and warrants reversal of the judgment below. Our review of the trial transcript reveals that the prosecution did, in fact, use the bill to prove the truth of matters asserted within it. The prosecution questioned Mrs. Hirtzinger about information revealed in the bill: when the call was made and to whom she placed the call. Such evidence is normally excluded by Evid.R. 802 unless it falls within a recognized exception to the hearsay rule. See *United States v. Jefferson* (C.A.10, 1991), 925 F.2d 1242, 1252 (under Fed.R.Evid. 802, pager bill was inadmissible hearsay to show that defendant owned a pager).

A telephone record or other such document can often fall within the business record exception provided under Evid.R. 803(6). See, *e.g., State v. Knox* (1984), 18 Ohio App.3d 36, 37, 18 OBR 61, 62–63, 480 N.E.2d 120, 121–122. However, this rule has an authentication requirement which must be met before the rule applies. The rule provides, in relevant part:

"(6) Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. * * *"

This rule requires that some person testify as to the regularity and reliability of the business activity involved in the creation of the record. In the instant case, the prosecution did not call to the stand any Ameritech employees to testify as to the nature of their billing practices. The only foundation for the evidence came through Mrs. Hirtzinger. That foundation was not adequate. " 'The witness providing the foundation need not have firsthand knowledge of the transaction.' " *State v. Vrona* (1988), 47 Ohio App.3d 145, 148, 547 N.E.2d 1189, 1194, quoting 1 Weissenberger's Ohio Evidence (1985) 75–76. Nevertheless, "it must be demonstrated that the witness is sufficiently familiar with the operation of the business and with the circumstances of the record's preparation, maintenance and retrieval, that he can reasonably testify on the basis of this knowledge that the record is what it purports to be, and that it was made in the ordinary course of business consistent with the elements of Evid.R. 803(6)." *Id.* Mrs.

Hirtzinger's experience as a customer of the cellular telephone service could not give her the knowledge necessary under the rule, nor did she exhibit such knowledge on the stand. See *State v. Lain* (Iowa 1976), 246 N.W.2d 238, 242, finding that a customer's testimony was insufficient to show that a telephone bill was recorded in the regular course of business. Therefore, because the cellular telephone bill in the instant case was hearsay not within any exception, it was inadmissible. Clearly then, the trial court erred in allowing the evidence to be admitted.

This determination does not end our analysis, however. In order to sustain the appellant's assignment of error, we must find that the error was of a magnitude to justify reversal. When a court admits hearsay against the dictates of Evid.R. 802, the standard of review is a strict one. "In the final analysis, the evidence in favor of conviction, absent the hearsay, must be so overwhelming that the admission of those statements was harmless beyond a reasonable doubt." *State v. Kidder* (1987), 32 Ohio St.3d 279, 284, 513 N.E.2d 311, 317; see, also, *State v. Sorrels* (1991), 71 Ohio App.3d 162, 165, 593 N.E.2d 313, 314–315. Although we have already found that the jury's verdict was supported by a sufficiency and by the weight of the evidence, to find harmlessness beyond a reasonable doubt, we must scrutinize the jury's decision with less deference than we granted in reaching those determinations. See *Sorrels, supra,* at 165, 593 N.E.2d at 314–315. Doing so, we cannot say beyond a reasonable doubt that the admission of the cellular bill had no effect on the jury's decision. The testimony in this case presented two mutually exclusive narratives of the events occurring June 23, 1996 and July 7, 1996. The jury was required to choose which narrative of events it found the most credible. Moreover, in order to convict the defendant of criminal trespass, the jury had to find the prosecution's version of events credible beyond a reasonable doubt. To the extent that the cellular bill bolstered the testimony of Mrs. Hirtzinger and her supporting witnesses as to the events of June 23, it may have had an appreciable effect on the jury's decision. The effect may also have carried over to the July 7 count. In any event, we do not find the remaining evidence of guilt so overwhelming that we can find the error harmless. Accordingly, we must sustain appellant's fifth assignment of error, reverse the judgment of the trial court, and remand the case for a new trial.

## VI

Appellant's fourth assignment of error is as follows:

"Defendant-appellant was denied a fair trial due to the prejudicial effects created by the errors occurring at trial."

Appellant intended by this assignment to have this court evaluate the cumulative effect of any errors it found but did not hold prejudicial enough to warrant a reversal. Because we have found reversible error in sustaining appellant's fifth assignment, we sustain this assignment as well.

For the foregoing reasons, we reverse the judgment of the trial court and remand the case for a new trial consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

FAIN and GRADY, JJ., concur.