OPINION
In this case, Danny Hall, Jr. appeals from his conviction for receiving stolen property. Hall raises the following assignments of error:
I. The trial court committed prejudicial error in failing to properly instruct the jury how to view and weigh the testimony of an accomplice.
II. Appellant was denied his constitutionally guaranteed rights to effective assistance of counsel.
III. The trial court committed prejudicial error by depriving Appellant of due process of law as guaranteed by theFourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution by entering a verdict of guilty as such verdict was against the manifest weight of the evidence.
After reviewing the record and the applicable law, we find the assignments of error without merit and affirm the judgment of the trial court. A brief explanation of our decision follows.
 I
The first assignment of error is based on the trial court's failure to instruct the jury on accomplice testimony, as required by R.C. 2923.03(D). In addition, the second assignment of error alleges ineffective assistance of counsel in that trial counsel neither objected to the jury instructions, nor asked for the accomplice instruction. Because these assignments of error are intertwined, we will consider them together. Concerning accomplice testimony, R.C. 2923.03(D) provides that:
 [i]f an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense, an attempt to commit an offense, or an offense, the court, when it charges the jury, shall state substantially the following:
 "The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
 It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth."
As was indicated, the trial court did not give this instruction. Instead, the court simply gave the jury general instructions on evaluating the credibility of witnesses.
In the trial court, Hall was charged with receiving stolen property — a 1983 Buick Riviera owned by Maryalice Kelly. According to the testimony at trial, the Riviera was parked in a lot near Maryalice's apartment. Late on the evening of September 21, 1998, Maryalice, her uncle, Richard Pigman, and a friend were watching a video. When Richard left to go home around 1:00 a.m., he saw Maryalice's car being backed out of the driveway. After alerting Maryalice, Richard drove around to see if he could find the car. In the meantime, Maryalice called the police, who subsequently found the car abandoned, a few streets away from the apartment.
Most of the witnesses in this case knew each other before the theft, as they grew up in the same neighborhood. Around the time the Riviera was stolen, a group of friends (Jeremy Martin, Chris Phillips, and Ronnie Robinette) were sitting in Jeremy's brother's driveway in a car, drinking beer. Jeremy testified that while they were drinking, Danny Hall pulled up in a grey Riviera. At the time, Jeremy did not know the Riviera belonged to Maryalice. Hall was driving the car and was wearing white gloves. Eddie Reynolds was in the passenger side, and he also had on white gloves. In a statement given to police a few days after the theft, Jeremy said that Hall told him after he pulled up that "the dumb ass Eddie didn't even know how to steal the car."
Jeremy's statement was consistent with testimony given by Eddie Reynolds about the theft. Eddie was the "accomplice" witness, and was originally also charged with receiving stolen property. However, the charge was dismissed and Eddie was given immunity to testify against Hall at trial. According to Eddie, he was at a friend's house on the night the Riviera was stolen. Hall came by, mentioned stealing a car, and asked Eddie's friend for a screwdriver. Eddie was intoxicated that night, and ended up leaving with Hall. After walking through a parking lot, they came upon a car. Eddie did not know that the car belonged to Maryalice Kelly. Eddie got behind the driver's seat and stuck the screwdriver into the ignition in an attempt to start the car. (In this regard, the police testified that General Motors vehicles are easily started without a key. The housing around the steering column is "popped" or "peeled," to access the ignition switch and a screwdriver is then used to start the car). Because Eddie did not know how to peel a column, Hall came around to the driver's side, broke the lock on the steering wheel, peeled the column, and started the car. By this time, Eddie was in the passenger's seat. At that time, Hall said, "You don't even know how to peel a column. You don't even know what you're doing."
After Hall got the Riviera started, they drove down the street and stopped to talk to Jeremy and the other men. Hall told them about Eddie not knowing how to steal a car. After Hall and Eddie talked for a few minutes, they left. After Hall and Eddie left, Jeremy and his friends drove down to the Robinette house and stood around outside.
Subsequently, Hall and Eddie pulled up in front of the Robinette house. By this time, Eddie had realized that the Riviera belonged to Maryalice. Specifically, Eddie recognized the car because his brother had repaired it. When Hall and Eddie got to the Robinette house, Hall jumped out because Eddie had told him the car belonged to Maryalice. According to Eddie, Hall said at this time that "This is Maryalice's car. This fool, dummy, has got us to steal Maryalice's car." Hall then told Eddie to drive off and get the car away from him.
As was noted, Eddie's account is consistent with Jeremy Martin's testimony that Hall chided Eddie because he did not know how to steal a car. It is further consistent with the rest of Jeremy's testimony, including Jeremy's description of the second encounter, i.e., when Hall said he was getting out of the Riviera because it belonged to Maryalice.
In their trial testimony, both Jeremy and Eddie admitted to giving prior inconsistent statements about the theft. On the night of the theft, the police questioned Jeremy and his friends, but Jeremy said he did not know anything. Notably, Hall was present at the time. A few days later, Jeremy gave a statement to the police that was consistent with his trial testimony. However, at a preliminary hearing in this case, Jeremy denied telling the police that Hall made a statement to the effect that Eddie didn't even know how to steal the car.
Likewise, Eddie gave the police a false statement both on the night of the theft and two days later, when he was questioned at the police station. The first time Eddie admitted any involvement was after he was arrested. All inconsistent statements were explored thoroughly during the direct and cross-examinations of these witnesses. Additionally, in the course of opening statement and closing argument, defense counsel commented on the inconsistencies.
Because Hall's trial counsel neither objected to nor requested any specific jury instructions, the error is reviewed under a plain error analysis. State v. Underwood (1983),3 Ohio St.3d 12.
In such cases, error is recognized "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. To prevail on a claim of this type, the defendant must show that the trial outcome "would clearly have been different" but for the error. State v.Carpenter (1996), 116 Ohio App.3d 615, 621 (citation omitted). See also, State v. Range (Sept. 30, 1997), Montgomery App. No. 15301, unreported, p. 5.
According to Hall, the error was prejudicial because the evidence against him was relatively weak. We disagree. As we mentioned above, Eddie Reynolds' testimony was substantiated by the testimony of Jeremy Martin, who saw Danny Hall driving the stolen car, and who also heard Danny acknowledge that the car was stolen. The evidence at trial revealed no motive for Jeremy's damaging testimony. In fact, a logical inference from the evidence is that Jeremy Martin lied to the police on the night of the crime to avoid getting a friend in trouble, and then lied again at the preliminary hearing for the same reason. There is no suggestion in the record that Jeremy was in any way connected to the theft of the car. Therefore, unlike Reynolds, Jeremy would have had no motive to lie. We have previously stressed that "the underlying purpose of the accomplice instruction is to protect a defendant from manufactured testimony by one who has a motive to lie." State v. Edwards (Feb. 28, 1997), Montgomery App. No. 15750, unreported, p. 3.
Therefore, while the trial court should have instructed the jury on accomplice testimony as required by R.C. 2929.03(D), we do not find that the trial outcome would have been different but for the failure. Furthermore, defense counsel did comment in the opening statement and in closing argument about inconsistent testimony. Counsel also specifically referred in closing argument to the immunity granted to Eddie and to Eddie's motive for lying. Moreover, these matters were the subject of direct and cross-examination during the trial. And, as we said earlier, the trial court did instruct the jury on credibility. Accordingly, we find the first assignment of error without merit. For the same reason, we reject the claim of ineffective assistance of trial counsel. Although trial counsel should have either asked for the instruction or objected when the trial failed to give it, prejudice did not arise, i.e., Hall has not shown the existence of a reasonable probability that the trial result would have been different absent counsel's errors. State v. Bradley (1989),42 Ohio St.3d 136, 137.
Based on the preceding discussion, the first and second assignments of error are overruled.
 II
In the third assignment of error, Hall claims the guilty verdict was against the manifest weight of the evidence. As support for this argument, Hall points to the fact that his conviction was based essentially on the testimony of two witnesses who admittedly gave inconsistent versions of the evening's events.
When we consider a manifest weight challenge, we examine the entire record,
 "weig[h] the evidence and all reasonable inferences, conside[r] the credibility of witnesses, and determin[e] whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
State v. Hirtzinger (1997), 124 Ohio App.3d 40, 46, quoting fromState v. Martin (1983), 20 Ohio App.3d 172. Significantly, "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id. After applying these standards and considering the record, including witness credibility, we are not persuaded that this case presents such an exceptional situation.
As we said before, the testimony of Jeremy Martin, if believed, provides a sufficient basis for conviction without any accomplice testimony. Furthermore, while Jeremy gave inconsistent statements, a logical inference, not rebutted by any evidence, is that Jeremy told different stories in an attempt to help a friend. Whether this was the appropriate thing to do is not the issue — we merely observe that the difference in stories does not automatically cause one to discredit the testimony. Additionally, no evidence at trial actually aided Hall, other than Hall's own statements after the theft. Hall did not give his own version at trial, and he was obviously not required to do so. Hall's possible explanation of his involvement was offered through the testimony of Maryalice Kelly and Richard Pigman. According to Pigman, Hall came to his house about 4 a.m. on the night of the theft, i.e., after the car had been recovered. At that time, Hall told Pigman that he did not steal Maryalice's car, and Pigman suggested that Hall speak to Maryalice. Hall then went to the apartment where Maryalice was staying and talked to her. His explanation at that time was that Eddie Reynolds had stolen the car and had picked him up. When Eddie told him whose car it was, he jumped out of the car.
Both Eddie and Jeremy testified that Hall jumped out or got out of the car. Based on their testimony, it appears that neither Hall nor Eddie realized the car they had stolen belonged to Maryalice Kelly, whom they had known for many years. After Eddie realized the car belonged to Maryalice and told Hall about that fact, Hall was upset and left the auto, telling Eddie to get rid of it.
The evidence, therefore, presents two possible scenarios — (1) that Hall did not steal the car; and (2) that Hall intended to steal the car, but may not have realized whose car it was until later. The first scenario is supported only by Hall's statements, made at a time when he had reason to lie. On the other hand, the second theory is supported by the testimony of an independent witness who had no apparent reason to lie. Additionally, certain other evidence supports Jeremy Martin's testimony and discredits Hall's explanation. For example, the police dusted for fingerprints, but none were found in the car. This is consistent with Jeremy's testimony that both Hall and Eddie were wearing gloves. Hall, himself, admitted being in the car that evening, meaning that in the normal course of events, he would have left fingerprints, unless he wore gloves. However, no logical explanation was given why Hall would be wearing gloves on a September night, nor why he would not have left fingerprints, since he was in the car.
In light of the above discussion, we cannot say the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. Consequently, the third assignment of error is without merit and is overruled.
Having overruled all the assignments of error, we affirm the judgment of the trial court.
WOLFF, J., and YOUNG, J., concur.
Copies mailed to:
Johnna M. Shia
David H. Fuchsman
Hon. Adele Riley