[Cite as *State v. Jones*, 2011-Ohio-3275.]
.

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24077 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 09-CR-3072 |
| v. | : | |
| | : | (Criminal Appeal from |
| KENNETH D. JONES | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of June, 2011.

. . . . . . . . .

MATHIAS H. HECK, JR., by KIRSTEN A. BRANDT, Atty. Reg. #0070162, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorneys for Plaintiff-Appellee

J. ALLEN WILMES, Atty. Reg. #0012093, 4428 North Dixie Drive, Dayton, Ohio 45414
      Attorney for Defendant-Appellant

. . . . . . . . .

HALL, J.

{¶ 1} Kenneth D. Jones appeals from his conviction and sentence on charges of aggravated robbery, felonious assault, having a weapon while under disability, and an accompanying firearm specification.

{¶ 2} Jones advances three assignments of error on appeal. First, he contends the trial

court erred in permitting a prosecution witness to testify about certain cell phone records without having sufficient personal knowledge of the subject matter. Second, he alleges that his trial counsel provided constitutionally ineffective assistance by failing to object and to seek a mistrial when a prosecution witness suggested that he had a prior record. Third, he claims his aggravated robbery conviction is against the manifest weight of the evidence.

{¶ 3} The present appeal stems from Jones's role in a shooting and robbery that occurred on September 15, 2009. The State's primary witness at trial was Jason Kinney, the victim. Kinney testified that he and Jones were friends who participated in the same billiards league. He also testified that he occasionally purchased marijuana from Jones. According to Kinney, he spoke to Jones on the telephone on September 15, 2009, and arranged to meet at Cox Arboretum to examine some marijuana. The meeting took place, and Kinney agreed to purchase the marijuana later that day. Sometime that evening, Jones called Kinney and instructed him to go to the Wood Hill apartments in West Carrollton to complete the transaction. Because he was unfamiliar with the area, Kinney called Jones back and got directions as he approached the apartments.

{¶ 4} Kinney arrived sometime after 11:00 p.m. and pulled into the parking lot. Jones and an unidentified male exited an apartment building and approached Kinney's truck. When Kinney expressed uneasiness about a third party's presence, the unidentified person walked away. Jones then entered the passenger side of Kinney's truck holding a duffel bag. Jones proceeded to pull out a handgun while saying, "Here's how it's going to go down." As soon as he saw the gun, Kinney tried to flee. Before he could escape, however, Jones shot him in the back. Kinney fell to the pavement. Jones then crawled across the seat and exited the

driver-side door. At the same time, Kinney took at least $1,000 from his pockets, exclaimed "all right, all right, all right," and threw the money toward Jones, who was standing over him with the gun pointed at him. Jones took the money and ran. After he disappeared, Kinney got back in his truck, drove less than a mile to a gas station, and called the police with his cell phone. When the police arrived, Kinney identified Jones as the shooter.

{¶ 5} Another prosecution witness, Paula Papke, testified about cell phone records showing with whom Jones had spoken on the day in question. Papke described herself as security department manager and custodian of records for Cincinnati Bell. She proceeded to discuss records that showed twenty-two text messages or calls between Jones and Kinney on September 15, 2009. Two of those communications occurred at 11:18 p.m. and 11:34 p.m., and they used a West Carrollton cell phone tower located about two miles away from where the robbery and shooting took place. Papke also testified about communications between Jones's cell phone and his girlfriend's cell phone at times when he claimed to have been at her home with her.

{¶ 6} A third witness, Jason Hendrix, testified that he resided at the Wood Hill apartment complex. Around 11:30 or so, he heard a gunshot in the parking lot outside his apartment. Hendrix testified that he looked out his window and saw only two people. One of them sped away in a truck while the other fled on foot. The following day, Hendrix reviewed a photo spread and identified Jones as the person he had seen running away.

{¶ 7} Detective Gene Jarman also testified at Jones's trial. He told the jury about his interview with Jones at the Montgomery County jail on September 21, 2009. According to Jarman, Jones admitted having met Kinney on the afternoon of September 15, 2009, at Cox

Arboretum to discuss a marijuana purchase. Jones insisted, however, that the drug deal never took place because he was unable to get the marijuana. According to Jarman, Jones claimed to have been at a bar throughout the evening. Jones admitted, however, that since the shooting people had been making arrangements for him to leave Ohio.

{¶ 8}   Jones presented one witness in his defense, Latasha Barber, his girlfriend. Barber testified that she picked Jones up outside a downtown Dayton bar shortly after 10:30 p.m. on September 15, 2009, and took him to her home in Huber Heights. According to Barber, she stopped at a gas station before arriving home a little after 11:00 p.m. Barber testified that she and Jones went to bed and remained there until the following morning. In rebuttal, detective Jarman identified phone records showing at least thirteen text messages or calls involving Jones's cell phone and Barber's cell phone from 11:42 p.m. on September 15, 2009, until 1:13 a.m. on September 16, 2009.

{¶ 9}   After hearing the evidence, the jury found Jones guilty of aggravated robbery, felonious assault, and a firearm specification.[1] The trial court separately found him guilty of having a weapon while under disability. He received an aggregate sentence of fourteen years in prison. This appeal followed.

{¶ 10}  In his first assignment of error, Jones contends the trial court erred in allowing Paula Papke to testify without having sufficient personal knowledge of Cincinnati Bell's phone records.

{¶ 11} As set forth above, Papke testified that cell phone records showed

---

[1] Parenthetically, we note that the jury actually found Jones guilty on multiple aggravated robbery and felonious assault charges. The trial court merged them as allied offenses of similar import, and that issue is not before us.

communications between Jones's phone and Kinney's phone in the vicinity of the shooting shortly before it occurred as well as communications between Jones's phone and Barber's phone when he claimed to have been in bed with her. Although Papke identified herself as custodian of records for Cincinnati Bell, Jones claims she did not create the records, did not know how they were created, could not explain how reliable they were, was not an expert in cell phone technology, could not say who placed the calls in question, and did not create the mechanism that recorded the call information. As a result, he claims Papke lacked sufficient personal knowledge to establish that the cell phone records fit within the business-records hearsay exception under Evid.R. 803(6).

{¶ 12} Upon review, we find Jones's argument to be without merit. Papke provided sufficient testimony to establish that the cell phone records were business records under Evid.R. 803(6). This Court has recognized that "[a] telephone record or other such document can often fall within the business record exception[.]" *State v. Hirtzinger* (1997), 124 Ohio App.3d 40, 49. "However, [Evid.R. 803(6)] has an authentication requirement which must be met before the rule applies." Id. It "requires that some person testify as to the regularity and reliability of the business activity involved in the creation of the record." Id. "'The witness providing the foundation need not have firsthand knowledge of the transaction.'" Id., quoting *State v. Vrona* (1988), 47 Ohio App.3d 145, 148. "Nevertheless, 'it must be demonstrated that the witness is sufficiently familiar with the operation of the business and with the circumstances of the record's preparation, maintenance and retrieval, that he can reasonably testify on the basis of this knowledge that the record is what it purports to be, and that it was made in the ordinary course of business consistent with the elements of Evid.R. 803(6).'" Id.

(Citation omitted).

{¶ 13} Here, we believe Papke had sufficient familiarity with Cincinnati Bell's business and with the preparation, maintenance, and retrieval of the records at issue. Papke testified that she manages an office responsible for processing more than 300 subpoena requests for phone records each month. She explained that the records are created when Cincinnati Bell's network of servers receives information from a cell phone tower that a call "ping[s] off of." According to Papke, a call typically pings off of the nearest tower unless it is busy or obstructed. In that case, a call will ping off of the closest available tower. Papke further testified that call records are stored on the network of servers at the company's central office. She retrieves this information by accessing a password-protected database that stores the records on the servers. To do so, she needs either a customer's account number or telephone number.

{¶ 14} On cross examination, Papke admitted that she could not speak "technically"about how call records are created. She acknowledged that she did not "program the system." Nor could she "put a percentage" on the reliability of the records. Although Papke knew that a cell phone call pings off of the best available cell tower, which usually is the closest one, she was unable to explain how that process worked. She also could not explain the mechanics of how the data was transferred from the tower to the company's servers. In addition, Papke admitted her inability to say who placed the calls at issue.

{¶ 15} In our view, the foregoing issues went to the weight of Papke's testimony, not the admissibility of the records she discussed. She did not need to be a computer programmer or a cell tower engineer to identify generally how the records at issue were prepared,

maintained, and retrieved. As set forth above, she explained that the records were created when information from a cell phone pinged off of a cell tower and was transmitted to Cincinnati Bell's network of servers. The records were maintained by being stored in a database on the servers at the company's central office. The records were retrieved by accessing the password-protected database. Based on her "day-to-day job duties," which included pulling hundreds of records, Papke testified that she found them to be reliable. Although Papke could not say who placed the calls at issue, other evidence in the record linked the cell phone numbers to Jones, Kinney, and Barber. Because we believe Papke sufficiently qualified the cell phone records as business records under Evid.R. 803(6), Jones's first assignment of error is overruled.

{¶ 16} In his second assignment of error, Jones claims his trial counsel provided constitutionally ineffective assistance by failing to object and to seek a mistrial when detective Gene Jarman suggested he had a prior record. This argument concerns Jarman's two references to an internet site known as "Justice Web." The first reference occurred as Jarman explained how he located Jones. He testified as follows:

{¶ 17} "I went into Justice Web, which is run by Montgomery County, for when people are booked in for minor—for misdemeanors at the jail. May take their photos and take their information, their address and things like that. And I did put in the search module, Darnell Jones, and it came back with a Kenneth Darnell Jones.

{¶ 18} "* * *

{¶ 19} "Well, at that point I wasn't really—I wanted to make sure that I was on the right track. One of the options that you have in Justice Web is you can click on the addresses

that people give whenever they're booked into jail or they get a traffic citation. And when I clicked on Kenneth Darnell Jones' prior addresses, it showed 512 Ludwell or 520 Ludwell." (Transcript, Vol. III at 485).

**{¶ 20}** The second reference occurred later, on cross examination, when Jarman was asked about prior addresses for Jones. He responded:

**{¶ 21}** "Some, yeah, there were some other previous addresses listed. There was one I believe on West Second Street. And I can't recall any others that were listed in Justice Web." (Id. at 524).

**{¶ 22}** On appeal, Jones contends Jarman's references to Justice Web were objectionable because they "announced to the jury that [he] was at least an arrestee, if not for certain a convicted criminal." Jones further asserts that he was prejudiced by his attorney's failure to object to Jarman's references and to seek a mistrial. We disagree.

**{¶ 23}** To prevail on his ineffective assistance of counsel claim, Jones must show deficient performance and resulting prejudice. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. To establish deficiency, he must show that counsel's representation fell below an objective standard of reasonableness. Id. To show prejudice, he must demonstrate that counsel's deficiency impacted the judgment against him. *State v. Bradley* (1989), 42 Ohio St.3d 136. Reversal is warranted if there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. Id.

**{¶ 24}** Upon review, we conclude that Jones cannot prevail on his ineffective-assistance claim. Jarman first testified that Justice Web displayed the addresses of

people who had been booked into jail for misdemeanors or traffic citations. Even if this statement was objectionable because it exposed Jones's prior contact with law enforcement, we find no reasonable probability that it contributed to his convictions. As set forth above, the record contained unrefuted testimony that Jones periodically sold significant quantities of marijuana to Kinney. In light of this testimony, the jury's knowledge that Jones also may have been arrested for a misdemeanor or traffic citation could not have done much to tarnish his image. The second statement by Jarman is even less problematic. In that statement, which was elicited by defense counsel on cross examination, Jarman made a passing reference to Justice Web without repeating that it provided contact information for arrestees. We find no reasonable probability that the outcome of Jones's trial would have been different if the jury had not heard either of the challenged statements. Accordingly, the second assignment of error is overruled.

{¶ 25} In his final assignment of error, Jones contends his aggravated robbery conviction is against the manifest weight of the evidence. In support, he asserts that there were no witnesses to any robbery and that no one saw Kinney with $1,000 cash. Jones also maintains that Kinney voluntarily gave him the money. Jones points out the absence of any oral demand for the money, which Kinney admittedly "threw" at him. Absent such a demand, Jones reasons that there could be no attempted or completed theft offense and, therefore, no robbery.

{¶ 26} Upon review, we find Jones's argument to be unpersuasive. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness

credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin* (1983), 20 Ohio App.3d 172, 175.

**{¶ 27}** With the foregoing standards in mind, we conclude that Jones's conviction is not against the weight of the evidence. Kinney testified that he was carrying at least $1,000 cash when Jones shot him. Eyewitness Jason Hendrix identified Jones as the person he saw fleeing the scene of the shooting. The fact that Jones did not orally demand Kinney's money did not preclude an aggravated robbery conviction. As the State points out, Kinney plainly knew what was happening when Jones pulled a handgun and announced, "Here's how it's going to go down." Only after being shot in the back did Kinney surrender his money to Jones, who was standing over Kinney with a gun pointed at him. Under these circumstances, the jury reasonably could have concluded that Kinney did not voluntarily give Jones $1,000.The jury could then also reasonably have found Jones guilty of aggravated robbery. The evidence does not weigh heavily against his conviction. The third assignment of error is overruled.

**{¶ 28}** The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

FAIN and FROELICH, JJ., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Kirsten A. Brandt
J. Allen Wilmes
Hon. Timothy J. O'Connell