[Cite as *State v. Nichols*, 2016-Ohio-567.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. John W. Wise, P. J. |
| Plaintiff-Appellee | Hon. Patricia A. Delaney, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | Case No. 15 CAA 06 0047 |
| PAULA L. NICHOLS | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Court of Common Pleas,
                             Case No. 14CR I 10 0487


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:       February 12, 2016


APPEARANCES:

For Plaintiff-Appellee               For Defendant-Appellant


CAROL HAMILTON O'BRIEN               JEFFREY P. UHRICH
PROSECUTING ATTORNEY                 Post Office Box 1977
MARK C. SLEEPER                      Westerville, Ohio  43086
ASSISTANT PROSECUTOR
140 North Sandusky Street, 3rd Floor
Delaware, Ohio 43015

*Wise, P. J.*

{¶1}    Defendant-Appellant appeals her conviction on one count of Theft (with Finding of Elderly Person) and one count of Receiving Stolen Property entered in the Delaware County Court of Common Pleas following a jury trial.

{¶2}    Plaintiff-Appellee is the State of Ohio.

<u>STATEMENT OF THE CASE</u>

{¶3}    Kristin Day lived with her husband, three kids, and her mother, Carolgene Billen in Powell, Ohio. (T. at 80-82). Ms. Billen hired someone they knew as Paula Wilson to clean the house once a week. (T. at 84-85, 107). When Paula came to clean, Ms. Billen was generally the only one home. (T. at 85).

{¶4}    On August 15, 2014, Ms. Day was getting ready for work when she noticed a shiny object on the floor in her closet. (T. at 86). The object was an old antique ring that was normally kept in a jewelry box. (T. at 86-87). Ms. Day asked her children if they had been playing with any of her stuff; they said they had not. (T. at 87). Ms. Day then asked her mother to check and see if she had anything missing. (T. at 88). Ms. Billen then discovered that she was missing a necklace. (T. at 88, 109). She described the item as a yellow gold necklace with a teardrop diamond pendent. *Id*. The necklace was made from one of the diamonds from Ms. Billen's late mother's wedding ring. (T. at 110). Ms. Billen reviewed an appraisal done at the time the jewelry was made to refresh her recollection about the specific carat weight of the diamond. (T. at 111). The gold was 14 karat and the diamond was about a fifth of a carat. (T. at 112).

**{¶5}** Ms. Day's husband called the police to report the theft. (T. at 89). Ms. Day suspected Paula, because she was the only non-family member who had been in the house. *Id.*

**{¶6}** Deputy Penix of the Delaware County Sheriff's Office took the theft report. (T. at 118). Ms. Billen described the missing necklace to him. (T. at 119-120). The family provided the name of Paula Wilson as the cleaning lady and identified her as someone who might have taken the necklace. (T. at 120). Eventually a meeting was set up for Dep. Penix to speak to Paula. (T. at 121).

**{¶7}** Upon inspecting Paula's driver's license, Deputy Penix learned her name was actually Paula Nichols. (T. at 123). Deputy Penix asked Ms. Nichols if she had pawned or sold anything, and she said that she had sold a ring. (T. at 122). Deputy Penix then ran Ms. Nichols' name through a law enforcement pawn shop database and learned that she had sold items at a pawn shop known as Dunkin's Diamonds in Lancaster, Ohio. (T. at 123-124).

**{¶8}** Keith Diltz, a general manager for Dunkin's Diamonds in Lancaster, Ohio, provided records related to the sale. (T. at 92-94). Mr. Diltz testified to the procedure Dunkin's Diamonds followed when purchasing jewelry. (T. at 93). The procedure included making a photocopy of the driver's license of the person selling the items and photographing the items that were being purchased. *Id.* He stated that Dunkin's Diamonds keeps records of all such transactions, and that he had access to those records through his employment. (T. at 93-94).

**{¶9}** The records showed that Ms. Nichols had in fact sold a ring like she had told Dep. Penix, but also showed that she had sold a 14-karat yellow gold necklace with

a .18 carat diamond. (T. at 98-99). Ms. Nichols provided her driver's license when she made the sale. (T. at 101). Mr. Diltz stated that he was not personally present for the transaction, but that he is familiar with the store policies and that everything appeared to have been done properly. (T. at 103-104).

{¶10} Dep. Penix later brought the photo of the pawned items from Dunkin's Diamonds to Ms. Billen for her to review. (T. at 113). Ms. Billen identified the necklace as hers without any hesitation. *Id*. Ms. Billen testified that she recognized the necklace as hers because of the teardrop shape and the shape and size of the diamond. (T. at 114).

{¶11} On October 31, 2014, the Delaware County Grand Jury returned an indictment charging Paula Nichols with two counts: theft from an elderly person, a felony of the fifth degree; and receiving stolen property, a misdemeanor of the first degree.

{¶12} On April 9, 2015, the case proceeded to jury trial. Following one day of testimony, the jury returned verdicts of guilty on both counts. The trial court merged the counts for sentencing purposes and sentenced Ms. Nichols to community control on the felony theft count.

{¶13} Appellant now appeals, assigning the following errors for review:

<u>ASSIGNMENTS OF ERROR</u>

{¶14} "I. THE TRIAL COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO OBJECT TO THE ADMISSION OF RECORDS FROM A PAWN SHOP AND THE TESTIMONY REGARDING THOSE RECORDS BY AN INDIVIDUAL WITHOUT PERSONAL KNOWLEDGE OF THOSE RECORDS OR OTHERWISE QUALIFIED TO TESTIFY REGARDING THOSE RECORDS.

**{¶15}** "II. THE CONVICTIONS OF THEFT AND RECEIVING STOLEN PROPERTY AGAINST DEFENDANT ARE NOT SUSTAINED BY THE EVIDENCE AND ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**I.**

**{¶16}** In her First Assignment of Error, Appellant argues that her trial counsel was ineffective. We disagree.

**{¶17}** To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See, Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689, citing *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

**{¶18}** "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

**{¶19}** Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

**{¶20}** Appellant argues her counsel was ineffective in failing to object to the admission of the pawn shop records and the testimony of Mr. Diltz, the general manager.

**{¶21}** The trial court has broad discretion concerning the admissibility of evidence. *Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 2005-Ohio-4787, 834 N.E.2d 323, ¶ 20. "A decision to admit or exclude evidence will be upheld absent an abuse of discretion." *Id.* An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). A reviewing court may not simply substitute its judgment for that of the trial court. *Id.*

**{¶22}** Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Under Evid.R. 802, hearsay is inadmissible unless it falls within an exception provided by the rules of evidence. Evid.R. 803(6) provides an exception to the hearsay rule for business records of regularly conducted activity.

**{¶23}** Evid.R. 803(6) provides:

(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or

circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

**{¶24}** In order to properly authenticate business records, a witness must "testify as to the regularity and reliability of the business activity involved in the creation of the record." *State v. Hirtzinger* (1997), 124 Ohio App.3d 40, 705 N.E.2d 395. Firsthand knowledge of the transaction is not required by the witness providing the foundation; however " 'it must be demonstrated that the witness is sufficiently familiar with the operation of the business and with the circumstances of the record's preparation, maintenance and retrieval, that he can reasonably testify on the basis of this knowledge that the record is what it purports to be, and that it was made in the ordinary course of business consistent with the elements of Rule 803(6).' " *State v. Vrona* (1988), 47 Ohio App.3d 145, 148, 547 N.E.2d 1189, quoting 1 Weissenberger's Ohio Evidence (1985) 75–76 Section 803.79. *See, also, Moore* at ¶ 18. *Deutsche Bank National Trust Co. v. Hansen*, 5th Dist. Fairfield No. 2010 CA 00001, 2011–Ohio–1223, ¶ 26; *State v. Coleman*, 5th Dist. Richland No. 14-CA-82, 2015-Ohio-3907, ¶ 36

**{¶25}** Here, Mr. Diltz, testified that he was a general manager for Dunkin's Diamonds, that the jewelry keeps records of jewelry purchases, that he was knowledgeable as to the procedures, that he had access to those records, and that in this particular case the records demonstrated that the normal procedures appeared to have been followed.

**{¶26}** We find that Mr. Diltz met the criteria for an "other qualified witness" and that his testimony was properly admitted under Evid.R. 803(6). Based on such finding, we do not find that Appellant's trial counsel was ineffective for failing to object to the admission of such records.

**{¶27}** Appellant's First Assignment of Error is overruled.

**II.**

**{¶28}** In her Second Assignment of Error, Appellant argues that her convictions were against the manifest weight and sufficiency of the evidence.

**{¶29}** The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilty beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

**{¶30}** In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly

lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins, supra*, at 387, 678 N.E.2d 541. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶31} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).

{¶32} This Court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley*, 2d Dist. Champaign No. 97–CA–03, 1997 WL 691510 (Oct. 24, 1997).

{¶33} Here, Appellant was charged in the indictment on two counts: Theft, in violation of R.C. §2913.02(A)(1) and Receiving Stolen Property, in violation of R.C. §2913.51(A), which provide:

R.C. §2913.02(A)(1) Theft; Aggravated Theft

(A) No person, with purpose to deprive the owner of property or services,

shall knowingly obtain or exert control over either the property or services

in any of the following ways:

(1) Without the consent of the owner or person authorized to give consent;

R.C. §2913.51(A) Receiving Stolen Property

No person shall receive, retain, or dispose of property of another knowing

or having reasonable cause to believe that the property has been obtained

through commission of a theft offense.

**{¶34}** Specifically, Appellant argues that the state of Ohio failed to present any evidence of anyone who "actually observed or encountered [Appellant] at the Dunkin Diamond store. Appellant further argues that the state of Ohio failed to produce sufficient evidence that the necklace she allegedly sold was the same necklace Ms. Billen claims was stolen from her.

**{¶35}** Upon review, we find that the state of Ohio presented evidence that Appellant's driver's license was on record as having been photocopied, as per their policy and procedure, in relation to the sale of a necklace that matched the description of the necklace reported stolen from Ms. Billen. Appellant was still in possession of said driver's license. Ms. Billen testified that she was able to identify the necklace sold to Dunkin's Diamonds as her necklace without any hesitation. Further, the karat weight of the gold and size of the diamond in the necklace matched the appraisal for Ms. Billen's stolen necklace. Additionally, Appellant told Deputy Penix that she had pawned other jewelry at

Dunkin's Diamonds in the past.  Finally, testimony was presented that Appellant was the only person who had access to the stolen necklace other than the family.

{¶36}  Accordingly, based on the foregoing, we find Appellant's convictions are supported by the sufficiency and manifest weight of the evidence.

{¶37}  Appellant's Second Assignment of Error is overruled.

{¶38}  For the foregoing reasons, the decision of the Court of Common Pleas of Delaware County, Ohio, is affirmed.

By: Wise, P. J.

Delaney, J., and

Baldwin, J., concurs.

JWW/d 0201