[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Criminal appeal from Court of Common Pleas Case No. CR-385934.
 JOURNAL ENTRY and OPINION
Defendant-appellant Gene Kelly appeals from his convictions after a jury trial for the following offenses: aggravated burglary, two counts of aggravated robbery and two counts of kidnapping, all with firearm specifications, together with possession of criminal tools, conspiracy, and having a weapon while under disability.
In his assignments of error, appellant asserts the trial court made a prejudicial remark to a witness, failed to exclude testimony that constituted an improper comment upon appellant's post-arrest silence, omitted a crucial instruction to the jury, wrongly refused to "dismiss" appellant's conviction for conspiracy and pronounced an unlawful sentence upon him. Appellant further asserts his trial counsel rendered ineffective assistance and his convictions are unsupported by the weight of the evidence.
This court has reviewed the record in view of appellant's assertions but finds none of them has merit; therefore, appellant's convictions and sentences are affirmed.
Appellant's convictions result from an incident that occurred in the early morning hours of October 20, 1999. At approximately 6:00 a.m., Jamie Matlock exited the rear door of his home located at 4009 Archmere Avenue in Cleveland, Ohio. Jamie was leaving to go to his place of employment. As he stepped outside, he saw "two people ducking down by [his] car"[1] in the driveway.
Immediately, one of the intruders, later identified as appellant, "put a gun in [Matlock's] face" and said, "Don't say a word." Appellant wore a "bandana mask" that covered the lower portion of his face. Appellant's companion, a larger man later identified as Richard Houdek, who wore a mask that completely obscured his features, pushed Matlock to the ground and placed a piece of duct tape over his mouth. Since the tape was not completely secured, however, Matlock was able to offer that the two assailants "take anything [they] want[ed.]" Matlock pleaded with the men to leave unharmed his fiancee and six-week-old child.
Matlock was hauled to his feet and ordered to "[o]pen up the door." Once he had done so, the two assailants pushed him inside. Matlock led them to his bedroom, where his fiancee, Tiffany Trunkett, lay sleeping. He proceeded to the room's closet, where he located a portable safe, opened it and handed its contents to one of the intruders. Matlock later estimated the safe's contents to include approximately $500 in cash.
The noise of this activity had awakened Trunkett. When the safe was empty, the two men bound Matlock's hands behind his back with more duct tape, placed him face down on the bed, then bound his feet with duct tape. They also ordered Trunkett to surrender her jewelry before repeating the taping process upon her.
After securing their victims, Houdek left the bedroom. Appellant finished searching the room for more valuables while standing guard. Fearful for their baby's safety, both Matlock and Trunkett also closely listened to activity in other portions of the small house. Trunkett heard a voice from the living room ask, "Should I take the stuff out?" She recognized the voice as belonging to a friend, Gary Baker. Although she did not notice a reply to the query, separate sounds came from the living room and the second floor of the home.
Finally, the commotion ceased. Appellant addressed Matlock and Trunkett, cautioning them he wanted them to remain quiet or he was "going to come in shooting." After approximately ten minutes of silence, Trunkett felt it was safe to attempt to loosen her bindings. She was able to free both herself and Matlock; the two thereupon summoned the police.
The officers who responded investigated the scene, taking photographs of the home's disarray and attempting to obtain fingerprints. Matlock indicated his family's "VCR," camcorder and "play station" had been taken, together with compact discs and games. Detective George Seroka interviewed Trunkett; she mentioned hearing the voice of Gary Baker during the incident.
Seroka followed this lead. He obtained Baker's address, discovered the existence of outstanding warrants for his arrest and had Baker transported to the station. Baker's brother Jason also was detained for questioning.
The Baker brothers initially denied any knowledge of the incident; however, these original statements to the officers proved to be inconsistent with evidence later obtained. When confronted with these inconsistences, Jason Baker acknowledged to Seroka he had heard his brother Gary planning the crime with two of his friends.
Seroka thereafter presented this new information to Gary Baker; Baker at that time admitted his participation in the incident at Matlock's house. Baker indicated that on the afternoon of October 18, 1999 his lack of success in a business venture led him to make a proposal to his "partner," Richard Houdek. The two of them had just left Matlock's home; Baker believed Matlock "had money," and Baker wanted to concoct a scheme to rob Matlock of it. Houdek suggested they "should get a third party." He told Baker appellant would be willing to help.
Later that evening, Baker, Houdek and appellant met at Baker's home. Baker described Matlock's home and routine. He outlined a plan "to lay low in Jamie's back yard and wait for [Matlock] to get ready to go to work that next morning." The three of them "would cover their faces up" and bring "a gun, duct tape." Appellant displayed the weapon he had brought to Baker's house. "It was a nine millimeter" for which, at that time, appellant lacked ammunition. However, the three of them determined that this deficiency was not fatal; therefore, they would proceed with the plan. Their offer to Jason Baker to let him participate was declined.
The three men readied themselves, then, at approximately 5:00 a.m. on October 19, 1999, proceeded to Matlock's residence in appellant's vehicle. Although each positioned himself outside Matlock's home according to the plan, "the[ir] time was off." The wait made them too "cold"; thus, after loitering a while, they "decided to try it the next day." After agreeing to meet again at Baker's house that night, appellant drove Houdek and Baker to their homes.
In the early morning hours of October 20, 1999 the three once again had assembled at Baker's house. Appellant, by this time, had obtained ammunition for his gun; "he pulled the clip out [so they] could see the bullets." The three men dressed themselves in black clothing with items that would obscure their faces, then appellant drove them all to a location near Matlock's home.
After they had concluded the robbery, appellant returned his companions to Baker's house. Subsequently, the three of them divided the items they had stolen.
Baker's decision to provide a written statement concerning his involvement in the incident to Seroka soon persuaded Houdek also to do so. Houdek's written statement was consistent with Baker's.
Appellant subsequently was indicted with Baker and Houdek on nine counts as follows: (1) aggravated burglary, R.C. 2911.11, with a firearm specification; (2-3) aggravated robbery, R.C. 2911.01, with firearm specifications; (4-5) kidnapping, R.C. 2905.01, with firearm specifications; (6) felonious assault, R.C. 2903.11, with a firearm specification; (7) possession of criminal tools, to-wit: a 1989 Mercury automobile, R.C. 2923.24; (8) conspiracy, R.C. 2923.01; and (9) having a weapon while under disability, R.C. 2923.13.[2] Appellant pleaded not guilty to the charges and retained counsel to represent him. Prior to appellant's trial, each of his co-defendants entered into a plea agreement with the state. They entered guilty pleas to amended charges in exchange for sentences of five years and their promises to testify truthfully at appellant's trial.
Appellant's case thereafter proceeded to a jury trial on the first eight counts; the remaining count was tried to the court. The state presented the testimony of the two victims, Seroka and another investigating police officer, the Baker brothers and Houdek. Appellant elected to present no testimony but introduced into evidence a letter written to him by Houdek just prior to trial.
The jury subsequently returned verdicts of guilty on all counts but the count charging appellant with felonious assault. The trial court also found appellant guilty of the remaining count. The trial court immediately proceeded to sentence appellant as follows: (1) consecutive terms of incarceration of three years on the firearm specifications and seven years each on counts one and two, to be served concurrently with the terms imposed on the remaining counts; viz., seven years on counts three, four, five and eight, and one year each on counts seven and nine.
The record reflects that the following day, the trial court called the case again for another sentencing hearing in order to explain its findings and reasons for the sentence it already had imposed upon appellant.
Appellant has filed a timely appeal of his convictions and sentences. He presents seven assignments of error for review, which will be addressed in logical order and combined when appropriate.
Appellant's fifth, second and third assignments of error state:
 V. THE APPELLANT WAS DENIED DUE PROCESS OF LAW AND A FAIR TRIAL BY VIRTUE OF COMMENTS BY THE TRIAL COURT.
 II. THE APPELLANT WAS DENIED THE PROTECTIONS AFFORDED BY THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES AS A RESULT OF COMMENT ON HIS POST-ARREST SILENCE.
 III. THE LOWER COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO CHARGE THE JURY REGARDING THE CONSIDERATION OF ACCOMPLICE TESTIMONY PURSUANT TO R.C. 2923.01 (H) (2).
In these assignments of error, appellant argues certain actions and omissions of the trial court compromised his right to a fair trial. Although appellant raised no objections in the proceedings below to what he now challenges, appellant seeks to excuse this deficiency by asserting the trial court's actions and omissions constituted plain error pursuant to Crim.R. 52(B). The plain error rule, however, "is to be applied with the utmost caution and invoked only under exceptional circumstances, in order to prevent a manifest miscarriage of justice." State v.Cooperrider (1983), 5 Ohio St.3d 226 at 227 (emphasis added); see, also,State v. Long (1978), 53 Ohio St.2d 91. Moreover, to constitute plain error, it must be obvious that, "but for the error, the outcome of the trial clearly would have been otherwise." State v. Underwood (1983),3 Ohio St.3d 12, at the syllabus.
Appellant first contends the trial court made a comment during victim Trunkett's direct examination "which could be construed as its acceptance *** of her testimony as true," thus tainting the fairness of his trial. Appellant refers to the following exchange:
[BY THE PROSECUTOR]:
You mentioned Gary Baker?
A. Yes.
Q. Who is Gary Baker?
A. He was my old friend's boyfriend.
Q. How long have you known Gary Baker?
A. Five years around.
Q. How well did you know him?
 A. Very well. I worked with him. In fact, I baby-sat his kid.
THE COURT: Did you consider him a friend?
THE WITNESS: Yeah.
 THE COURT: You don't need enemies with a friend like that, right?
 THE WITNESS: I threw his baby shower. I always went to their birthdays and did a lot for them.
(Emphasis added.)
The standard for analysis of a trial court's comments during trial was set forth in State v. Wade (1978), 53 Ohio St.2d 182, 188, vacated and remanded on other grounds (1978), 438 U.S. 911, as follows: (1) the defendant has the burden to prove prejudice occurred; (2) it is presumed the trial court is in the best position to decide whether it committed a breach of propriety and whether corrective measures are necessary; (3) the remarks are considered in light of the circumstances; (4) consideration is given to the comments' possible effect upon the jury; and (5) consideration also is given to the comments' possible effect upon the effectiveness of defense counsel's presentation.
A review of the transcript of the entire trial in this case demonstrates appellant cannot meet his burden to prove prejudice occurred. The trial court made similar remarks on other occasions which clearly were intended merely to relieve tension engendered by the proceedings. The remarks caused no disruption. Moreover, during its charge to the jury, the trial court instructed the jury to disregard anything which might be construed as the trial court's views regarding the case. A jury is presumed to follow the trial court's instructions. Pang v. Minch
(1990), 53 Ohio St.3d 186.
This court cannot conclude, therefore, either that appellant was denied a fair trial or that plain error occurred as a result of the trial court's comment. State v. Lute (Nov. 2, 2000), Lorain App. No. 99CA007431, unreported; State v. Huckabee (Mar. 9, 2001), Geauga App. No. 99-G-2252, unreported.
Appellant next contends the trial court permitted the introduction into evidence of an improper comment upon appellant's post-arrest silence. Appellant asserts the following exchange between the prosecutor and Det. Seroka compromised his constitutional right against self-incrimination.
[BY THE PROSECUTOR]:
 What do you do with Mr. Kelly at that point [after his arrest]?
[DET. SEROKA]:
 Once he's brought back he's taken to city jail, and myself and Sergeant James Chura, who is a sergeant at the Strike Force, at that time went to the county jail to interview him to afford him the same as we did anybody else.
Q. What happened?
 A. At which time we told him, ["]Do you know why you are here?["] And he said no. I said, ["]Do you want to make a statement or interview[?"] and he said no, he wouldn't talk. It was over. We didn't talk to him anymore after that.
A review of the context in which this evidence was introduced reveals it was an inquiry only into the course of the police investigation of the incident rather than an indirect insinuation of appellant's guilt. Additionally, appellant's post-arrest silence was not mentioned again in any context. The single reference in Seroka's testimony, therefore, did not create any inference of appellant's guilt. State v. Lute, supra. Error, if any, was harmless beyond a reasonable doubt. State v. Vrona
(1988), 47 Ohio App.3d 145.
Appellant also contends the trial court's failure to instruct the jury concerning the evaluation of accomplice testimony as required by R.C.2923.01(H)(2) constituted plain error.
R.C. 2923.01 states in pertinent part as follows:
 (H) (1) No person shall be convicted of conspiracy upon the testimony of a person with whom the defendant conspired, unsupported by other evidence.
 (2) If a person with whom the defendant allegedly has conspired testifies against the defendant in a case in which the defendant is charged with conspiracy and if the testimony is supported by other evidence, the court, when it charges the jury, shall state substantially the following:
 "The testimony of an accomplice that is supported by other evidence does not become inadmissible because of the accomplice's complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect the witness' credibility and make the witness' testimony subject to grave suspicion, and require that it be weighed with great caution.
 It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth."
(Emphasis added.)
In State v. Endicott (1994), 99 Ohio App.3d 688 at 693, with regard to an argument similar to that raised by appellant in this case, the court made the following observations:
Ohio courts have long recognized that:
 "Jury instructions are to be tailored to the facts of each case. Patterned instructions are designed to aid the court in preparation of the charge to the jury. Obviously, only those instructions which are applicable to the facts of the case should be given. The trial judge must select and modify instructions to fit the particular facts of each case." (Emphasis added.) Avon Lake v. Anderson
(1983), 10 Ohio App.3d 297, 299, 10 OBR 472, 474, 462 N.E.2d 188, 190.
 The trial judge, therefore, rather than the jury, was vested with the responsibility to make an initial determination whether there was other evidence which could be interpreted to support the testimony of the co-conspirators. Furthermore, this court will not reverse the decision of the trial judge relating to whether sufficient facts existed to support a jury instruction absent an abuse of discretion. See State v. Barnd (1993), 85 Ohio App.3d 254, 260, 619 N.E.2d 518, 521-522.
(Emphasis added.)
A review of the record in this case fails to indicate either an abuse of discretion or plain error occurred. Appellant's defense focused upon a theory that Baker and Houdek either committed the offenses on their own or were assisted by Jason Baker rather than appellant. Considering the evidence presented in this light, the trial court could have determined R.C. 2923.01(H)(2) did not apply since the only direct evidence of appellant's involvement came from those three men.
This conclusion is supported by the record, which reflects defense counsel interrupted the trial court just as it began to instruct the jury on the charge of conspiracy. Counsel requested a sidebar discussion; thereafter, the trial court resumed at the point where the interruption had occurred. Under these circumstances, this court cannot find the existence of plain error. State v. Merrick (Nov. 16, 1990), Champaign App. No. 89-CA-16, unreported. Cf., State v. McKinney (Mar. 6, 1990), Franklin App. Nos. 89AP-466-469, unreported.
For the foregoing reasons, appellant's fifth, second and third assignments of error are overruled.
Appellant's fourth assignment of error states:
 THE LOWER COURT ERRED IN FAILING TO DISMISS THE CONSPIRACY CONVICTIONS (SIC) AFTER THE APPELLANT WAS CONVICTED OF COMMITTING THE SPECIFIC OFFENSE THAT WAS SUBJECT (SIC) OF THE CONSPIRACY.
Appellant contends that since he was found guilty of the "specific offenses" of kidnapping, aggravated burglary and aggravated robbery alleged in the indictment, the trial court acted improperly in failing to dismiss the separate charge against him of conspiracy.
Pursuant to R.C. 2923.01 (A), a person is guilty of conspiracy if he either plans or aids in planning the commission of a "specific offense." The crimes of kidnapping, aggravated burglary and aggravated robbery are listed therein as specific offenses. However, R.C. 2923.01 (B) further provides:
 (B) No person shall be convicted of conspiracy unless a substantial overt act in furtherance of the conspiracy is alleged and proved to have been done by the accused or a person with whom the accused conspired, subsequent to the accused's entrance into the conspiracy. For purposes of this section, an overt act is substantial when it is of a character that manifests a purpose on the part of the actor that the object of the conspiracy should be completed.
(Emphasis added.)
The evidence introduced by the state indicated appellant and his co-defendants first made their plans on the evening of October 18, 1999. They prepared to commit the crimes in the early morning hours of October 19, 1999, dressing themselves, driving to a location near 4009 Archmere Avenue, and even hiding in wait at the address for a length of time until they became too "cold," deciding to postpone the commission of the specific offenses until the following morning.
Thus, since appellant's actions on the morning of October 19, 1999 constituted a "substantial overt act" in furtherance of the conspiracy that occurred separately from the October 20, 1999 commission of the "specific offenses," they constituted a separate offense pursuant to R.C. 2923.01(B). The trial court, therefore, did not err in failing to dismiss that charge against him. State v. Turner (Aug. 29, 1997), Erie App. No. E-95-056, unreported; State v. Johnson (Dec. 5, 1997), Delaware App. No. 96CA-A-12-066, unreported.
Consequently, appellant's fourth assignment of error also is overruled.
Appellant's seventh assignment of error states:
 THE VERDICTS BELOW WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Appellant argues his convictions for aggravated burglary, aggravated robbery and kidnapping, all with firearm specifications, and for possession of criminal tools, conspiracy, and having a weapon while under disability were unsupported by the weight of the evidence. This court disagrees.
With regard to an appellate court's function in reviewing the weight of the evidence, the supreme court has set forth the following as the relevant analysis:
 *** Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. (Citation omitted.)
***
 When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs [v. Florida (1982)], 457 U.S. [31]. at 42, 102 S.Ct. [2211] at 2218, 72 L.E.2d [652] at 661. See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional
case in which the evidence weighs heavily against the conviction.").
State v. Thompkins (1997), 78 Ohio St.3d 380 at 387. (Emphasis added.)
Thus, this court must be mindful that the weight of the evidence and the credibility of the witnesses are matters primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
A review of the testimony presented in this case reveals it was logical and consistent. Matlock testified he was accosted by two white males who were distinguishable from each other by their physiques. The smaller-statured of the males brandished a firearm. These two assailants forced Matlock to permit their entry into his home and further forced both Matlock and Trunkett to relinquish their valuables before tying the victims' hands and feet to prevent their interference while the remaining rooms in the house then were stripped of portable valuables.
Both of the victims heard an additional person taking part in the latter activity while they were guarded by the smaller-statured white male. Trunkett recognized the third persons s voice as that of her friend, a black male named Gary Baker. Clothing matching that of the assailants later was discovered in Houdek's automobile.
Upon becoming aware that evidence existed that proved they had taken part in the crimes, Gary Baker and Houdek testified appellant was their accomplice, having taken part in both the planning of the crimes and the aborted attempt to commit them on October 19, 1999, along with participating in the actual commission of the crimes on October 20, 1999. Baker and Houdek further testified appellant brought the weapon involved and displayed to them that, on the latter occasion, it was fully loaded.
The testimonies of Gary Baker and Houdek were corroborated by that of Jason Baker, who testified he had overheard the three men planning the crimes, had seen appellant's weapon and had observed his brother preparing to commit the crimes.
It was for the jury to determine whether the testimony of appellant's co-defendants was credible. This court cannot conclude the jury lost its way in resolving conflicts in the evidence. Therefore, appellant's convictions are not against the manifest weight of the evidence. Statev. Pitts (Apr 9, 1998), Cuyahoga App. No. 72304, unreported; State v.Martin (Oct. 28, 1999), Cuyahoga App. No. 73456, unreported; State v.Johnson, supra; State v. Pless (Oct. 24, 1991), Cuyahoga App. No. 59269, unreported; State v. Gaines (June 10, 1993), Cuyahoga App. Nos. 62756, 62757, unreported.
Accordingly, appellant's seventh assignment of error also is overruled.
Appellant's first assignment of error states:
 THE LOWER COURT ERRED AND DENIED THE APPELLANT DUE PROCESS AND EQUAL PROTECTION OF THE LAW BY IMPOSING CONSECUTIVE SENTENCES IN A MANNER CONTRARY TO LAW.
Appellant argues the trial court failed to make the necessary findings prior to ordering his sentences on counts one and two, which were first degree felonies, to be served consecutively. This court disagrees.
R.C. 2929.14(E)(4) and R.C. 2929.19(B)(2) set forth the statutory requirements to be followed in imposing consecutive sentences. The former statute specifies two conditions: "if the court finds" such "service is necessary to protect the public *** and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct ***" The court further must consider three other factors and, if any one of those factors is applicable, consecutive sentences are warranted.
Focusing on the statutory language "if the court finds," the supreme court has stated:
 We construe this — mean that — the record of the sentencing hearing must reflect that the court found that either or both of the two statutorily sanctioned reasons — warranted the — sentence.
* * *
 — [I]n enacting the new sentencing laws, the General Assembly only sought to confirm that courts considered the statutory requirements by stating that a defendant may obtain certain relief if "the court did not specify in the finding it makes at sentencing that it found one or more of the factors specified." (Emphasis added.) The structure of the various sentencing statutes suggests that the General Assembly approached felony sentencing by mandating a record reflecting that judges considered certain factors and presumptions to confirm that the court's decision-making process included all of the statutorily required sentencing considerations.
State v. Edmonson (1999), 86 Ohio St.3d 324 at 326-327. (Emphasis in original; underscoring added.)
Additionally, however, unlike the fact situation addressed by the supreme court in Edmonson, a trial court is mandated by R.C.2929.19(2)(c) also to give its reasons for imposing consecutive sentences.
In justifying its decision in this case, the trial court explained:
* * *
 2929.14 requires the court to make a finding [explaining the sentence imposed] and the finding is as follows. That the court sentenced the defendant on counts one and two to consecutive sentences. This was done and deemed necessary to protect the public from future crimes and to punish the offender.
 This sentence was not disproportionate due to the seriousness of the conduct and the danger posed to the public and the harm caused by the offenses were (sic) so great that no single prison term would be an adequate response.
 In the court's judgment the defendant in this case committed the worst form of the offense of aggravated robbery and presented the greatest likelihood of committing future crimes.
 The court can think of no greater form in the sense of the worst form of this type of crime than confronting a person outside their house with a gun, wearing a mask, taping them up and terrorizing them. Therefore, the court is making this finding on the record to explain why I imposed the sentence that it (sic) did.
Thank you.
(Emphasis added.)
As the foregoing comments demonstrate, the trial court gave the matter its full consideration and also fully complied with the statutory requirements in imposing sentence upon appellant. State v. Rogers (Nov. 24, 1999), Cuyahoga App. No. 74988, unreported; cf., State v. Colegrove
(Nov. 9, 2000), Cuyahoga App. No. 75705, unreported. This court, therefore, cannot clearly and convincingly find the trial court's order of sentence was improper. R.C. 2953.08 (G) (1) (b); State v. Hawkins
(Aug. 19, 1999), Cuyahoga App. No. 74678, unreported; State v. Lesher
(July 29, 1999), Cuyahoga App. No. 74469, unreported.
Accordingly, appellant's first assignment of error is overruled.
Appellant's sixth assignment of error states:
 THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS PURSUANT TO THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
Appellant argues the trial counsel he retained to represent him was ineffective for failing to raise challenges to the following: (1) Seroka's testimony that appellant declined to give a statement after his arrest; (2) the trial court's comment to Trunkett during her testimony; (3) appellant's conviction for conspiracy; and (4) the lack of a jury instruction on "co-conspirator" testimony. Appellant further asserts counsel should have requested a presentence investigation and report. In view of this court's disposition of appellant's previous assignments of error, his argument is unpersuasive.
In Ohio, a properly licensed attorney is presumed competent. State v.Smith (1985), 17 Ohio St.3d 98. One claiming ineffective assistance of counsel bears the burden of demonstrating the following: viz., (1) there has been a substantial violation of an essential duty owed to him by counsel, and (2) he has been thereby prejudiced. State v. Lytle (1976),48 Ohio St.2d 291; State v. Bradley (1989), 42 Ohio St.3d 136, citingStrickland v. Washington (1984), 466 U.S. 668; see, also, State v.Smith, supra. This court will not second-guess what could be considered to be a matter of trial strategy. Id. Moreover, the establishment of prejudice requires proof "that there exists a reasonable probability that were it not for counsel's errors, the result of the trial would have been different." State v. Bradley, supra, syllabus 3. The record of this case with regard to trial counsel's actions fails to demonstrate his performance fell below an objective standard of reasonableness.
With regard to appellant's first three challenges, any objections by defense counsel on these occasions would have been fruitless and possibly annoying to the judge and jury. Since counsel cannot be faulted for exercising prudence, appellant cannot sustain his burden to prove counsel violated an essential duty on these bases.
Similarly, with regard to appellant's fourth challenge, it was defense counsel's strategy to deny appellant's knowledge of and participation in the crimes. Counsel's efforts were designed to suggest, instead, that Jason Baker was the third assailant; thus, Jason's testimony would be suspect. To request a jury instruction indicating Gary Baker, Richard Houdek and Jason Baker were "co-conspirators" with appellant, therefore, would have been contrary to the entire thrust of counsel's case. Statev. McClain (Mar. 15, 2001), Cuyahoga App. No. 77740, unreported; Statev. Tart (June 8, 2000), Cuyahoga App. No. 76223, unreported; State v.Holly (July 8, 1999), Cuyahoga App. No. 74452, unreported.
Finally, in view of appellant's stipulation to his prior conviction and the extensive testimony in the current case, appellant's assertion that a presentence investigation could have affected the trial court's sentencing decision merely is speculation.
The record reveals trial counsel was fully prepared and was a capable, diligent advocate for his client. Therefore, appellant cannot sustain his burden to prove trial counsel was ineffective. State v. Bradley, supra. Appellant's sixth assignment of error, accordingly, also is overruled.
Appellant's convictions and sentences are affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI. A.J. and JAMES J. SWEENEY. J. CONCUR
 ______________________ KENNETH A. ROCCO JUDGE
[1] Quotes indicate testimony given by a witness at appellant's trial.
[2] Appellant stipulated at trial to a previous conviction for drug trafficking.